THE WABASH RAILWAY COMPANY

484:31 LRA 333

*v.*

LLOYD W. BROWN *et al.*

*Filed at Springfield June 16, 1894.*

1. NEGLIGENCE—*when it becomes a question of law.*  Where, from the facts admitted or conclusively proved, there is no reasonable chance that reasonable minds would reach different conclusions as to negligence, it becomes a question of law.

2. And likewise where a single material fact is conclusively shown or uncontradicted, the existence or non-existence of which is conclusive of the right of recovery.

3. SAME—*facts tending to show, not reviewable.*  Whether the escape of sparks from an engine, or the placing of a car containing combustible materials near the engine in a train, constitutes negligence, is a question of fact, on which error cannot be assigned in this court.

4. SAME—*where negligence exists, the extent of it is always a fact.*  If negligence exists, its degree, whether slight, ordinary or gross, must always depend upon the evidence, and cannot be determined by the court.

5. COMMON CARRIER—*limiting liability in consideration of reduced rate.*  If a carrier accepts freight and bills it at a lower rate, without notifying the shipper of a provision in the shipping contract limiting the carrier's liability in consequence of the reduced rate, or that he can pay a higher rate with unlimited liability, such provision limiting the carrier's liability will not be enforced.

6. SAME—*cannot contract against gross negligence.*  A common carrier cannot relieve itself, by contract, from any portion of a loss resulting from its gross negligence.

7. SAME—*how formal notice of claim may be waived.*  A carrier may waive a provision in a shipping contract that claim of damage must be made in writing, in five days, and be verified by affidavit, by receiving, without objection, unsworn notice, and treating the claim as pending for adjustment upon its merits.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the County Court of Morgan county; the Hon. OWEN P. THOMPSON, Judge, presiding.

The appellees, in April, 1892, having purchased in Chicago a number of high-bred cattle for breeding purposes,

shipped the same from Chicago to their farm, near New Berlin, on the line of the appellant's railroad. The train was made up in Chicago about dark in the evening of the day they were so shipped. The car was an ordinary stock car in which the cattle were shipped,—the only car that had live stock in it in the train,—and was placed in a train of some twenty-six cars, the third from the engine. The cattle had hay to eat, and enough more to bed them. When not far from Springfield, at the Illinois Central crossing, one of the appellees saw the trainmen running to the front of the train, and, supposing something was wrong, ran over the train, and when he came to his car found the engineer and fireman had just extinguished a fire in the car. The fire was in the north-west corner of the car, which was going west at the time, showing the fire to have started in the end of the car next to the engine. It is claimed there was nothing in the car to start a fire, and the engineer and fireman had just put the fire out by pouring water on it, obtaining the water from the ditch alongside of the railroad, and carrying the water in buckets from the ditch. Of the five head of fine cattle in the car none were injured save the cow in controversy, the "4th Duchess of Hillsdale," and she was badly burned,—so much so that she is practically of no value. The proof shows that the value of the cow was $850. Only two days before, she was sold at public auction for that sum. The jury found, by their verdict, that the damages of appellees were $650.

It is provided in the contract, among other things, in consideration of a reduced rate of freight, as follows:

"*Tenth*—In consideration of the rate aforesaid, it is further agreed that no claim for damages which may accrue to the party of the second part under this contract shall be allowed or paid by the party of the first part, or sued for in any court by the party of the second part, unless a claim for such loss or damage shall be made in writing, verified by the affidavit of the party of the second part,

or his or their agent, and delivered to the general freight agent of the party of the first part, at his office in the city of St. Louis, within five (5) days from the time said stock is removed from said cars.

"*Eleventh*—It is agreed that neither the party of the first part, nor any connecting line, shall be liable for more than the sum of $100 on account of loss or injury of any one horse or other animal received or carried by the party of the first part under this contract."

On the margin of the contract is written in red ink the following : "My special attention has been directed to clause No. 11, limiting the liability in case of accident, and to which condition I knowingly subscribe."

The declaration contains two counts, and charges negligence on the part of appellant in permitting sparks and brands of fire to be emitted from its engine, and in placing the car in such close proximity to the engine that the sparks and brands of fire ignited the bedding in the car, etc.

It appears from the evidence that the reduced rate referred to in the contract was a rate of twelve and six-tenths cents per hundred weight at which cattle were taken, and that the regular rate charged by appellant for the transportation of that number of cattle, of the value of the cattle in question, from Chicago to New Berlin, without the execution of the special contract, was seventy and one-half cents per hundred.   E. W. Brown, one of the appellees, testifies he only knew of one rate,—that of carload lots,—and that being governed by the size of the car.   In all his shipments he never had heard of any other, and ordered a car without saying anything about the rate ; and John Connors, the agent at Chicago, on cross-examination, states that the only rate talked over by him, as agent of appellant, and Brown, was the carload rate, depending on its being a thirty-foot or a thirty-four-foot car, and Brown took the thirty-four-foot car.   It appears the only knowledge appellees had of rates was obtained from Connors, the agent, and it would appear

from the evidence that Brown shipped at the rate mentioned, knowing no other, and that the company had another rate, which was much more than the regular rate, to which appellees' attention was not called. It is shown by the evidence that the appellees did not learn the rate until arriving at their destination.

A day or two after the injury, one of appellees addressed a letter to the claim agent of the company, which was delivered to the station agent of the company to be forwarded, in which letter it was stated that the injury had occurred, but the damage could not then be determined, and further communication would be given. On the 12th of October appellees again wrote the claim agent, stating the damage. That agent, on October 13, acknowledged the receipt of the letter, and stated it had been forwarded to the freight claim agent, who had adjustment of such claims. On the 18th of October the freight claim agent wrote appellees, saying the letter of the 12th had been referred to the legal department for advice as to their liability, and when returned he would communicate further.,

Appellees recovered a judgment for $650 and costs, which was affirmed by the Appellate Court.

On the trial in the county court appellant asked the court to instruct the jury, that there was no evidence before the jury from which they would be authorized to find that the injury complained of was occasioned by or through the gross negligence of defendant; that upon the pleadings and evidence the plaintiffs were entitled to recover only the sum of $100, as provided in the eleventh clause of the contract; that unless it had been shown that plaintiffs made a claim, in writing, for the loss, verified by affidavit, and delivered the same to the general freight agent of defendant, at his office in St. Louis, within five days from the time the cow was removed from the car, as provided in the tenth clause of the contract, plaintiffs were not entitled to recover.

The Appellate Court affirmed the judgment of the county court, and this appeal is prosecuted by the railroad company, a certificate of importance having been made by that court.

Mr. GEORGE B. BURNETT, and Mr. GEORGE S.GROVER, for the appellant.

Mr. EDWARD L. McDONALD, and Mr. JAMES N. BROWN, for the appellees.

Mr. JUSTICE PHILLIPS delivered the opinion of the court :

The first point made by plaintiff is, that there was no evidence before the jury from which they were authorized to find the injury complained of was occasioned by the gross negligence of the company. This being an action to recover on the alleged ground of negligence of plaintiff, if the question is one of fact this court is bound by the adjudication of the county and Appellate Courts.

Negligence is ordinarily a question of fact. Where the evidence on material facts is conflicting, or where, on undisputed facts, fair-minded men of ordinary intelligence may differ as to the inferences to be drawn, or where, on even a conceded state of facts, a different conclusion would reasonably be reached by different minds, in all such cases negligence is a question of fact. The fact to be determined is the existence or non-existence of negligence. With all the facts considered, if there is a reasonable chance of conclusions differing thereon, then it is a question for a jury. Negligence may become a question of law where, from the facts admitted or conclusively proved, there is no reasonable chance of different reasonable minds reaching different conclusions. It may also become a question of law if a single material fact is conclusively shown or uncontradicted, the existence or non-existence of which is conclusive of a right of recovery.

The negligence alleged in the declaration in this case and shown by the proof appearing in the record presents only questions of fact. Whether there was negligence in allowing the escape of sparks or brands from the engine, or whether there was negligence in placing a car of the kind with such freight within three cars of the engine, are questions which, by section 90 of the Practice act, must be determined by the inferior and Appellate Courts, and by that section, in this class of cases, no assignment of error in this court shall call in question the determination of the Appellate Court upon controverted questions of fact. If negligence exists, its degree, whether slight, ordinary or gross, must always depend upon the evidence, and not be determined by the court as a question of law, where there is evidence tending to prove the particular fact. Under the averments of the declaration, and proof in the record, there was evidence for the jury to consider, and the sixth of plaintiff's refused instructions, "the court instructs the jury that there is no evidence before you from which you would be authorized to find that the injury complained of was occasioned by or through the gross negligence of defendant," was a request for the court to limit the degree of negligence, if any existed, and invaded the province of the jury. The instruction does not present the question whether, where a right of recovery must depend upon the existence of gross negligence, it must be specially pleaded, and is not framed so the trial court must, on that question, express an opinion, as it does not allude to the pleading or issue.

The eleventh clause in the contract executed by appellant and appellees was as follows :

"*Eleventh*—It is agreed that neither the party of the first part, nor any connecting line, shall be liable for more than the sum of $100 on account of loss or injury of any one horse or other animal received or carried by the party of the first part under this contract."

A provision of a similar character was a part of a contract of shipment considered by this court in *Chicago and Northwestern Railway Co.* v. *Chapman*, 133 Ill. 96, where it was held: "No representation was made by appellee or his agent to induce the fixing of the value, either of the property shipped or of the services of appellant for its carriage. It is insisted that the company had two classifications at the time, under which live stock was shipped; that one limited the amount of recovery for a horse to $100 in case of loss, and that in the other class there was no limitation but a higher freight rate charged. At the time of this shipment no notice was given of any such classification. The appellant's agent received the property, charged what he saw proper, and made out the bill of lading, without asking any questions as to the value of the property. The fact that such classification existed could in no way affect the plaintiff's right of recovery, unless notice thereof had been brought home in some way to the plaintiff or his agent. But it cannot avail, in any event, as against the right of recovery here. Plaintiff was guilty of no misconduct which would estop him from asserting his right to recover the value of his property, and it was unlawful for the railway carrier to contract for exemption from liability resulting from the gross negligence of its servants." The facts here are so similar to the facts in that case, that that case, on this point, must be held conclusive.

But, regardless of the question of notice to appellees, it must be held that the rule is, that a common carrier cannot relieve itself, by contract, from any portion of the loss sustained by a consignor, upon goods in possession of the carrier and being transported by it, resulting from gross negligence. It was not error to refuse the second instruction, which was to the effect that no more than $100 could be recovered.

The defendant asked the following instruction, which was refused, and its refusal is assigned as error :

"The court instructs the jury, that in the contract read in evidence it is provided that no claim for damages shall be allowed or paid by the defendant, or sued for in any court by the plaintiffs, unless a claim for such loss or damage shall be made in writing, verified by the affidavit of the plaintiffs or their agent, and delivered to the general freight agent of the defendant, at his office, in the city of St. Louis, within five days from the time the stock should be removed from the car; and the court instructs the jury, that unless it has been shown that the plaintiffs made such claim in writing, verified by affidavit, as aforesaid, and delivered the same to the general freight agent of the defendant, at his office in the city of St. Louis, within five days from the time the cow in question was removed from the car, then the law is that the plaintiffs are not entitled to recover, and the jury should find for the defendant."

Upon this question the Appellate Court held : "It is next urged that the appellees were not entitled to recover, because no claim for the loss or damage sued for was made in writing, and verified by an affidavit, and delivered to the general freight agent of the appellant company within five days after the stock was removed from the car, as was required should be done by the tenth clause of the contract of shipment. It was proven that one of the appellees, within less than the required five days, indited a letter to the claim agent of the appellant company, in which he stated the facts of the injury to the cow, and also that the extent of the injury, or the amount of damages likely to result therefrom, could not then be ascertained, etc. This letter was placed in an envelope which was addressed to the claim agent, and delivered, within less than five days after the injury, to Mr. Todd, who was the station agent of the appellant company at New Berlin, a station on the line of its road. In October

following, the appellees again wrote to the appellant's claim agent, and in this last letter, after reciting the facts of the injury to the cow, said: 'We immediately notified you of the injury, advising you that as soon as the extent of damage could be ascertained we would claim payment for same.' This letter elicited an answer from appellant's freight claim agent, to the effect that the claim had been referred to the legal department for an opinion as to liability upon the claim, and that the appellees would be informed what action would be taken when the advice of the law officer of the road had been received, and that, if necessary, the writer would visit the appellees at New Berlin for the purpose of examining the cow, and, if possible, agreeing upon the amount of damage, if the company was liable to pay damages. The letter first written by Mr. Brown was within the five days after the removal of the stock from the car. It was not verified by an affidavit, and for that reason, and perhaps others, was not in full compliance with the agreement regarding notice. The jury was warranted, however, in believing that the company received it without making objection or pointing out its defects, and afterwards treated the claim as pending for adjustment upon its merits. We think it was rightly held that the appellant company had waived further or other notice of the alleged loss."

It is undoubtedly the right of the company to waive this clause in the contract for carriage, and from what is above said by the Appellate Court that was a question on which that court has passed as a finding from the evidence, and if there was evidence tending to show that clause was waived, the instruction, which ignored evidence pertaining to whether there was a waiver, was properly refused.

We find no error in the record, and the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*