## THE CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY v. HEATH.

[No. 2,620.    Filed March 9, 1899.]

CARRIERS.—*Contract for Shipment of Live Stock.—Waiver of Condition by Agent.*—Where the general claim agent of a common carrier receives an unverified claim for damages to live stock, without objection to such claim for lack of verification, and such agent states at the time that he will not consider the claim unless the original contract is produced, and certain proofs of loss furnished, the receipt of the claim and the statement of the agent amount to a waiver of the provision in the contract for shipment that any claim for damages thereunder must be verified. *pp. 49-53.*

PLEADING.—*Statement of Fact.—Conclusion.*—An averment in a complaint against a common carrier on a contract of shipment "that plaintiff did within five days after said damages were sustained as aforesaid, make his claim in writing therefor, as provided in said contract," is the statement of a fact and not a conclusion. *p. 51.*

CARRIERS.—*Live Stock Shipment.—Delay in Delivery.—Complaint.*— A contract with a common carrier for the shipment of cattle did not specify any time within which the cattle were to be delivered. The complaint on the contract, by the shipper, averred that it was known and understood by the carrier that the plaintiff was shipping his cattle for the market of the following day, and that, if they had been transported with reasonable dispatch, there was abundant time for the delivery in time for such market. *Held,* that the averments of the complaint did not in any way change the terms of the written contract, and that it was proper to consider the facts averred in arriving at the intention of the parties. *p. 53.*

SAME.—*Shipment of Live Stock.—Delay on Account of Cold Weather.* —It is the duty of a carrier who contracts to transport live stock

Cleveland, etc., R. Co. *v.* Heath.

during the month of January, to provide against any delay which might be caused by the freezing up of pipes between the tank and boiler of the engine; and such freezing cannot be said to be " caused by stress of weather" within the meaning of a contract of shipment which provides that the carrier shall not be liable for delay caused thereby. *pp. 53, 54.*

CARRIERS.—*Shipment of Live Stock.—Limitation of Liability.*—A common carrier may limit his common law liability for live stock transported by him, but he may not exempt himself from liability for his own negligence. *p. 54.*

HARMLESS ERROR.—*Sustaining Demurrer to Paragraph of Answer.*—To sustain a demurrer to a good paragraph of answer is harmless, where the facts provable under such paragraph were admissible under the general denial which was also pleaded. *p. 55.*

PRACTICE.—*Motion to Direct Verdict.*—Where a verdict should be set aside as contrary to the law and the evidence, an application of the unsuccessful party to have a verdict directed in his favor should have been granted. *p. 56.*

CARRIERS.—*Claim for Damages.—Adjustment of by Freight Agent.*—Where the assistant general freight agent of a railroad company received from a shipper a claim addressed to the claim agent of the company, and assumed to act upon it, the presumption arises that he had authority from the company to adjust it, and such acts of his as were incident to the adjustment would be binding on the company, although the shipper's contract provided that all claims for damages must be filed with the freight claim agent. *pp. 56, 57.*

EXPERT TESTIMONY.—*Opinion of Witness as to Shrinkage of Live Stock in Shipment.*—A witness who had had several years' experience in shipping cattle, and had observed their weight at place of shipment and at place of delivery, and who knew the age and condition of certain cattle shipped by plaintiff, was competent to give an opinion as to their probable shrinkage between the time of shipment and the time of delivery. *p. 58.*

SAME.—*Live Stock Shipment.—Damages for Delay.—Evidence.*—In an action for damages for delay of a live stock shipment, where there was evidence that the engine was overloaded and that it was in a defective condition, and that this was known to those in charge of the train, such facts should be considered by the jury in determining whether the delay was the result of the negligence of the railroad company. *p. 59.*

From the Benton Circuit Court.    *Affirmed.*

*J. T. Dye, B. K. Elliott* and *W. F. Elliott,* for appellant.
*Daniel Fraser* and *W. H. Isham,* for appellee.

Cleveland, etc., R. Co. *v.* Heath.

ROBINSON, J.—Appellee recovered a judgment for damages for an alleged breach of a live stock contract.

The sufficiency of the complaint is first questioned. It is argued that appellee's complaint confesses that he did not perform all his part of the contract, and attempts to excuse performance by averring a waiver, but that no waiver is shown.

The live stock contract upon which the complaint is founded contains, among other provisions, the following: "That no claim for damages which may accrue to the said shipper under this contract shall be allowed or paid by the said carrier, or sued for in any court by the said shipper, unless a claim for such loss or damage shall be made in writing, verified by the affidavit of the said shipper or his agent, and delivered to the freight claim agent of the said carrier at his office in the city of Cincinnati, Ohio, within five days from the time said stock is removed from said car or cars; and that. if any loss or damage occurs upon the line of a connecting carrier, then such carrier shall not be liable unless a claim shall be made in like manner, and delivered in like time to some proper officer or agent of the said carrier on whose line the loss or injury occurs."

The complaint avers that appellee performed all the stipulations of the contract on his part to be performed, "except as herein alleged to have been waived by the defendant." It. is true, as argued, that this is an admission that appellee did not perform his part of the contract. But the complaint also avers that appellee did, within five days after the damages. were sustained, make his claim in writing therefor, as provided for in the contract, that "the general freight claim agent of said defendant did receive in his office in the city of Cincinnati said claim, and afterward, expressly waiving the verification of said claim, and making no objection thereto because it was not verified, acknowledged that he had received notice of said claim, but that it would not consider the

Cleveland, etc., R. Co. v. Heath.

same unless he would produce the original live stock contract; and that it would not consider the same unless he would produce a printed market report; and that it would not consider the same unless he would produce proof of disinterested persons of the shrinkage of said cattle.    *    *    *
That in the manner and form aforesaid, the said defendant did waive the verification of said notice, because it made no objection to the same on that ground, but made other demands as aforesaid.    *    *    *    That the plaintiff was at all times willing to verify said notice and demand, but was never requested thereunto."

The contract provides that a claim for damages shall be delivered to appellant's freight claim agent, and the averment of the complaint is that the claim was sent to the general freight claim agent; but it is further averred that this officer received the claim, assumed to act upon it, and impliedly agreed to consider it, if certain facts were furnished him. But he made no objection to the want of verification. After he had received the claim, acknowledged its receipt, and said he would not consider it unless the original contract was produced, also a printed market report and proof of disinterested persons of the shrinkage of the cattle, it cannot be said that the pleading shows simply a declination to consider the claim. It must be held, under such facts, that the claim was then pending, and further action postponed until the matters requested were furnished. The complaint sufficiently shows that a claim for damages was sent to an officer of appellant, that he received it and assumed to act for appellant in the matter of its adjustment. A person held out by appellant as its freight claim agent, or its general freight claim agent, would be presumed to have authority in the adjustment of such claims as that at bar. And when he assumes to act upon such a claim he would have authority to do such acts as are incident to its adjustment. The provision requiring a verified claim was inserted by the company, and for its own benefit, and if an agent, held out by it as a

freight claim agent, receives the claim, and assumes to act upon it, his acts in that regard will be the acts of his company, and the waiver of a condition precedent by him will bind the company.

By proper averments the complaint shows the particular damages appellee had sustained, and then avers "that this plaintiff did within five days after said damages were sustained, as aforesaid, make his claim in writing therefor as provided for in said contract." We cannot agree with counsel that this is pleading a conclusion. It is the averment of a fact, that appellee within a certain time presented a claim for the damages which he has described in his complaint. The suit is on the contract. The damages are set out in the pleading. And for these damages thus described he presented a claim.

In *Kohler* v. *Montgomery*, 17 Ind. 220, cited by counsel, suit was brought against the maker and indorser of a note, and it was averred that the note was duly presented for payment, but did not name the day when demand was made. It was held that as it was not necessary to make the protest and notice a part of the complaint, it did not show the day when demand was made, and as it simply averred that the note was duly presented for payment, a demurrer would not have raised the question.

In *Harbison* v. *Bank, etc.*, 28 Ind. 133, 92 Am. Dec. 308, cited by counsel, suit was brought against the drawer of a bill of exchange, and an averment that the bill was "duly presented for payment at the place where payable," was held bad against a demurrer for not showing that the presentment was at the time of the maturity of the bill.

In the case at bar it is not simply averred that a claim was duly presented, but that it was presented as provided in the contract, and that the claim was for such damages as were described in the complaint.

Whether the requirement that a claim for damages shall be delivered to appellant at Cincinnati, Ohio, within five

days, is a reasonable one, it is not necessary to decide, because the pleading shows that a claim was presented, and was received and acted on. The limitation could be waived by the company. An unverified claim was presented within the time, and it must be held that the pleading shows the verification was waived.

The true rule is that where a claim is filed in such a case, and specific objection is made for not acting upon it, any other objection, which, if made, could have been readily met, is waived. See *Bartlett* v. *Adams*, 43 Ind. 447; *Gerrish* v. *Norris*, 9 Cush. 167; *Embden* v. *Augusta*, 12 Mass. 316; *Wabash R. Co.* v. *Brown*, 152 Ill. 484, 39 N. E. 273; *Goodwin* v. *Massachusetts, etc., Ins. Co.*, 73 N. Y. 480; *Owen* v. *Farmers', etc., Ins. Co.*, 57 Barb. 518; *Louisville, etc., R. Co.* v. *Steele*, 6 Ind. App. 183.

In the case of *Wabash R. Co.* v. *Brown, supra*, where this same question was under consideration, the court said: "It is next urged that the appellees were not entitled to recover because no claim for the loss or damage sued for was made in writing, and verified by an affidavit, and delivered to the general freight agent of the appellant company within five days after the stock was removed from the car, as was required should be done by the tenth clause of the contract of shipment. It was proved that one of the appellees, within less than the required five days, indited a letter to the claim agent of the appellant company, in which he stated the facts of the injury to the cow, and also that the extent of the injury, or the amount of damages likely to result therefrom, could not then be ascertained, etc. This letter was placed in an envelope, which was addressed to the claim agent, and delivered, within less than five days after the injury, to Mr. Todd, who was the station agent of the appellant company at New Berlin, a station on the line of its road.   *   *   * The letter first written by Mr. Brown was within the five days after the removal of the stock from the car. It was not verified by an affidavit and for that reason, and perhaps

others, was not in full compliance with the agreement regarding notice. The jury was warranted, however, in believing that the company received it without making objection or pointing out its defects, and afterwards treated the claim as pending for adjustment upon its merits. We think it was rightly held that the appellant company had waived further or other notice of the alleged loss."

The contract itself does not fix the time when the cattle were to be delivered at their destination, and it is argued that there is no showing of any wrongful or unavoidable delay. It is a well settled rule that a written contract merges all parol negotiations between the parties. It is also a settled rule that in construing a contract the primary object is to ascertain the intention of the parties at the time the contract was made. In arriving at this intention the court may consider the situation of the parties, their motives in dealing with each other, and the objects sought to be accomplished. So that there may be extrinsic matter averred which will aid the court in construing the contract as written.

It is averred that it was known and understood by appellant that appellee was shipping his cattle for the market in the forenoon of January 28; that appellant knew the time of the opening of the market; that the stock was loaded in time for the appellant's 4 o'clock train on the evening of January 27, and had they been transported with reasonable dispatch there was abundant time between 4 o'clock p. m. of the 27th, and 5 o'clock a. m. of the 28th for the delivery of the cattle, and that the contract was entered into with special reference to delivering them in time for such market. It cannot be said that these averments change in any way the terms of the written contract. It is proper to consider them in arriving at the intention of the parties at the time. See *Guaranty, etc., Assn.* v. *Rutan*, 6 Ind. App. 83; *Evansville, etc., R. Co.* v. *Meeds*, 11 Ind. 273.

The contract provides that the carrier shall not be liable for delay "caused by stress of weather." It is averred in the

complaint that the weather was very cold; that appellant's servants in charge of the train allowed the pipes to freeze up so that they could not carry water from the tank to the boiler, and that by reason thereof the train was delayed several hours. It is argued that this is an admission that there was a stress of weather. We cannot say that very cold weather at the time and in the latitude in question would be a stress of weather within the meaning of this clause. Such weather is not unusual in that latitude at that time in the year, and of this fact courts take judicial notice. Very cold weather may be reasonably expected in that latitude at that time of year. It was the duty of the carrier to provide against that which might reasonably be expected, and the theory of the complaint is that it had negligently failed to do this. It is also averred that the delay was not caused by stress of weather, or from any cause beyond the control of appellant. See *Louisville, etc., R. Co. v. Thompson, Adm.*, 107 Ind. 442, 57 Am. R. 120; *Louisville, etc., R. Co. v. Faylor*, 126 Ind. 126; *Willock v. Pennsylvania, etc., R. Co.* 166 Pa. St. 184, 30 Atl. 948, 27 L. R. A. 228, 45 Am. St. 674.

Where a common carrier undertakes to transport fat cattle to market, it will be held to such diligence and dispatch as is commensurate with the trust it has accepted. It is a well settled rule that a common carrier may limit his common law liability for live stock transported by him, but he may not exempt himself from liability for his own negligence. *Rosenfeld v. Peoria, etc., R. Co.*, 103 Ind. 121, 53 Am. R. 500, and cases there cited; *Railroad Co. v. Lockwood*, 17 Wall. 357; *East Tennessee, etc., R. Co. v. Johnston*, 75 Ala. 596, 51 Am. Rep. 489; *United States Ex. Co. v. Backman*, 28 Ohio St. 144; *Black v. Goodrich, etc., Co.*, 55 Wis. 319, 13 N. W. 244. Where goods are delivered to the carrier without any contract as to the time of delivery, it will not be liable for delay, unless the delay is unreasonable. In such case his responsibility is only that of an ordinary bailee for

hire.  But if it undertakes to deliver the goods within a certain time and by its own fault or negligence fails, it is liable for the delay.  The averments of the complaint show that the stock was to be delivered at a certain time, and that because of the failure to deliver within that time the injury resulted.  The demurrer to the complaint was properly overruled.

The sixth paragraph of answer alleged that the contract, made part of the answer, provided that appellant agreed to transport the live stock to its destination if on appellant's road, otherwise to the connecting carrier; that its destination was Chicago, Illinois, not on appellant's line but on that of a connecting carrier; that appellant delivered the stock to the connecting carrier more than eight hours before such carrier delivered the same at its destination, and in ample time for such connecting carrier to deliver the same at its destination in time for the morning market; that there was no unreasonable delay on appellant's line, or in delivering the stock to the connecting carrier; that there was no shrinkage of the cattle while on appellant's line, and if there was any unreasonable delay it was on the line of the connecting carrier, and not on appellant's line.

There was no reversible error in sustaining the demurrer to this paragraph of answer.  The complaint is upon the theory that appellant owned the whole line over which the stock was to be transported.  Under the averments of the complaint there could be no recovery unless the loss occurred on appellant's line.  The burden was on appellee to show that the loss occurred on appellant's line.  Appellant, to defeat this, had the right to show that the loss, in fact, occurred on a connecting line, and it could do this under the general denial, which was pleaded.  As all the material facts pleaded in this answer were provable under the general denial, sustaining the demurrer was harmless error.  *Landwerlen* v. *Wheeler,* 106 Ind. 523; *Peters* v. *Banta,* 120 Ind. 416; *Ratliff* v. *Stretch,* 117 Ind. 526; *Board, etc.,* v. *Chipps, Adm.,*

131 Ind. 56, 16 L. R. A. 228; *Kelley* v. *Kelley*, 8 Ind. App. 606. It was conceded in the oral argument of this cause that the demurrer to the reply was insufficient in form and presents no question.

Appellant filed a written motion requesting the court to direct the jury to return a verdict in its favor. Overruling this motion is assigned as error. The determination of this question requires an examination of the evidence. Such a motion presents, in effect, the same question as that presented by a motion for a new trial on the ground that the verdict is contrary to the law and the evidence. And where a verdict should be set aside for this cause, an application of the unsuccessful party to have a verdict directed in his favor should have been granted. *Oleson* v. *Lake Shore, etc., R. Co.*, 143 Ind. 405, 32 L. R. A. 149. If there is no evidence as to any material fact in issue, or no undisputed evidence from which the jury could justly conclude that such fact existed, the court should take the question from the jury, and direct a verdict. See *Oleson* v. *Lake Shore, etc., R. Co., supra; Ohio, etc., R. Co.* v. *Dunn*, 138 Ind. 18; *Weis* v. *City of Madison*, 75 Ind. 241, and cases cited.

It is argued that the evidence proves that no verified claim was ever presented to the "freight claim agent," and hence there is no legal evidence of a waiver. It appears from the evidence that appellee made out a claim, and delivered it to appellant's local agent at Easton, who sent it with another claim to L. L. Hyde, claim agent, at Cincinnati, Ohio, and in reply received a letter from Hyde in which he acknowledged receipt of the same and said: "Before we can take up and investigate these two claims we must have original live stock contract, printed market reports showing fall in market alleged by claimants, also evidence in proof of the shrinkage claimed." In sending the claim to Cincinnati, the local agent was acting for appellee. The letter itself shows that it came from appellant's freight claim depart-

ment, and that Hyde was the assistant general freight agent at Cincinnati. If the assistant general freight agent of appellant received a claim addressed to the claim agent of the company, and assumed to act upon it, the presumption arises that he had authority from the company to adjust it, and such acts of his as were incident to its adjustment would be binding on the company. The object of having the claim sent is not to give any particular agent notice, but to give notice to the company, and if an agent in the same general department takes up the claim and assumes to act upon it, he is acting for the company. He had authority to waive the verification of the claim, and the letter he sent in reply to the receipt of the claim must be held a waiver of that requirement. See *Chicago, etc., R. Co.* v. *Katzenbach*, 118 Ind. 174.

It is further argued that there is no evidence of negligence. There is evidence to show that the train which took the stock should have left Easton at 4:27 p. m.; but did not leave until 8:30 p. m.; that it should have reached Kankakee at 9 or 10 o'clock, and did not reach there until 2 o'clock; that the engine was too heavily loaded; that the flues were leaking; that the train was too heavy in the condition the engine was; that on the way part of the train was set off to lighten the load; that fifty of the flues of the engine were leaking when the train left Easton; that after the load was lightened the engineer could not draw the train and was finally pushed into Kankakee by another engine; that on account of the leaking flues it was not possible to keep sufficient steam. We think it clear that there is some evidence that the delay was caused by a defective engine which was overloaded. See *Willock* v. *Pennsylvania Co.*, 166 Pa. St. 184. But it is argued that the extreme cold weather occasioned the delay, and that, under the contract, appellant was not liable for any delay caused by "stress of weather." The evidence shows that the weather was very cold, and the water about the engine froze, and that when the train would

stop they had difficulty in starting on account of freezing. We have already seen that very cold weather in a latitude where such weather is at times experienced, and at a time of the year when such weather is liable to be experienced, can not be termed a stress of weather, within the meaning of the contract. It is not shown that the weather was unusual for that latitude. In such case it is the duty of the carrier to make provision for operating its trains in all kinds of weather that may reasonably be expected in the particular latitude. See *Louisville, etc., R. Co.* v. *Thompson,* 107 Ind. 442; *Seybold* v. *Terre Haute, etc., R. Co.,* 18 Ind. App. 367.

A witness was asked the question, "If these cattle had gone to Chicago in the usual time that it ordinarily takes to go that distance, what would they have weighed in Chicago after they arrived there?" The witness answered they would shrink about fifteen pounds each. The court then asked the witness to state what they would weigh, in his opinion, which he did. It appeared that the witness had had several years experience buying and shipping fat cattle from Easton to Chicago; that he shipped seven or eight hundred a year; that he often bought cattle by estimated weight, instead of weighing them; that he knew the condition of these cattle, how they had been fattened, their age and condition generally, and that he had owned cattle of like character, age, and flesh, and that he had made observation of their weight at home, and weight at Chicago. We think it was shown that the witness was competent to give an opinion as to the probable shrinkage of fat cattle shipped a certain distance, within a certain time, and that was the effect of the question asked.

The sixth instruction asked by appellant was to the effect that appellee could not recover unless he had made a verified claim for damages, and delivered it to appellant's freight claim agent at Cincinnati within five days. This instruction was properly refused. There was evidence of a waiver of the verification of the claim, and this should have been taken

Cleveland, etc., R. Co. *v.* Heath.

into consideration in the instruction, and was properly taken into consideration in the instruction given by the court. What we have already said upon the question of waiver applies to the instructions on that question, and need not be repeated.

The court instructed the jury that if they found from all the evidence "that the defendant in fact overloaded its engine with which it attempted to transport the live stock of the plaintiff mentioned in the contract, or that there was some one or more of the defects existing in its engine set out in the complaint, and defendant had notice thereof, or ought to have known of the same, you may consider such circumstantial evidence in determining whether the defendant was guilty of negligence in any one of the particulars attributed to it by the plaintiff's complaint." There was no error in giving this instruction.

There was some evidence that the engine was overloaded, and that when it was at Easton, and before it started with the cattle, fifty of the flues, about all that could be seen, were leaking, that this fact was known to those in charge of the train, and that on account of this leakage it was not possible to keep sufficient steam. To start with an engine known to be out of repair was negligence, and delay caused by such negligence is actionable. It is true that the fact that the flues were leaking does not establish negligence, but the negligence of appellant consisted in attempting to transport the stock with an engine known to its employes to be thus out of repair. Judgment affirmed.

Wiley, J., took no part in this decision.