# Belvidere Gas & Electric Company v. Susanna Boyer, Administratrix.

## Gen. No. 4,485.

1. ASSUMED RISK—*what not.* The crossing of wires outside of the building in which the deceased was working as an engineer in charge of the machinery thereof, causing a powerful current of electricity to be diverted and brought into the building on wires not intended to carry such a current, is not one of the ordinary and usual incidents connected with the employment of the deceased and therefore is not assumed by him.

2. ASSUMED RISK—*when instruction is not erroneous in ignoring defense of.* An instruction is not erroneous in ignoring the defense of assumed risk where the evidence claimed to support such defense did nothing more than tend to show contributory negligence.

3. CONTRIBUTORY NEGLIGENCE—*how question of determined.* The question of contributory negligence is one of fact to be determined by the jury, unless from the facts admitted or conclusively proven there is no reasonable chance of different reasonable minds reaching different conclusions, in which case it is one of law to be determined by the court.

4. CONTRIBUTORY NEGLIGENCE—*what to be considered in determining question of.* In determining whether one who has lost his life by an accident has been guilty of contributory negligence, it is only proper to consider his acts in connection with conditions as they appeared and were known at the time of the accident, and conditions not known to exist until after his death should be rejected.

Action on the case for death caused by alleged wrongful act. Error to the Circuit Court of Boone County; the Hon. ARTHUR H. FROST, Judge, presiding. Heard in this court at the April term, 1905. Affirmed. Opinion filed August 1, 1905.

W. C. DeWOLF, for plaintiff in error.

FRED L. HUNT and H. S. HICKS, for defendant in error.

MR. JUSTICE FARMER delivered the opinion of the court.

This suit was brought by defendant in error to recover damages for the death of James Boyer, alleged to have been caused by the negligence of plaintiff in error. The Belvidere Gas & Electric Company was engaged in running an electric plant in the city of Belvidere for the

purpose of furnishing light. The deceased was its engineer and had charge of the machinery in the building, and the men employed therein. The building faced east and was divided into two rooms or apartments. The engines and dynamos were in the north room, and the boilers in the south one. Both rooms were lighted by drop electric lights. Between two of the boilers was a passageway about three feet wide leading into the engine room. On each side of this passageway were the brick walls enclosing the boilers. It was lighted by a drop light suspended from the ceiling, the wire being in two sections. The end of the first section was some five feet above the brick floor, and to it was attached a socket with hard rubber key. The light was on the second section. This wire was from eighteen to twenty feet long, and was attached to the first section by means of a porcelain plug inserted in the socket. The purpose of having the wire so long was that the light might be carried around in front of the boilers to enable the firemen to see how much water they contained. When not being used, the cord was hung on a hook or peg in the wall. On the evening of January 31, 1903, between five and six o'clock, John Tynan, a fireman employed by defendant in error, took hold of this wire and received a shock which rendered him unconscious for a short time. Boyer, the deceased, was near by at the time, and told another employe to get the wire away from Tynan, which he did, and he and another employe carried him out of the east door of the boiler room to the sidewalk, while Boyer telephoned for a doctor. Tynan revived in a short time and Boyer said he would take the wire down so no one else would get hurt. Tynan said to him, "Look out for that wire, it is hell." Boyer went into the boiler room and in some way received the current passing through the wire, and was thereby killed. The trial of the case resulted in a verdict and judgment for plaintiff below for $4,000, and the defendant brings the case to this court by writ of error.

At the close of the plaintiff's evidence, and again at the

close of all the evidence, plaintiff in error requested the court to direct a verdict in its favor, and the rulings of the court in denying these requests are assigned for error. It is argued, first, that the evidence clearly shows Boyer's death resulted from an assumed risk, and second, that he was guilty of such contributory negligence as to bar a recovery even though his death did not result from an assumed risk.

The proof shows Boyer had had considerable experience with electrical machinery and had been in the employment of defendant in error as engineer in its plant seven or eight months before his death. As engineer, he had control of the machinery. O'Brien, a fireman who worked for plaintiff in error at the same time Boyer did, testified Boyer's business was running the engines and dynamos, seeing that the boilers were cleaned and when repairs were to be made in the room he made them or saw to their being made. The wires upon which the drop light in question was, were intended to carry only 110 volts, and when everything was in proper order, this is all the current that passed over them. An investigation after Boyer's death, resulted in the discovery that on a pole outside the building, a wire carrying 1100 volts was crossed with the wire from which the current was received for the light in the passageway in the boiler room. Friction of the two wires had worn the insulation so that the wires came in contact, making what is termed a "ground." The result was that 1100 volts passed over the wires in the boiler room. The branch block of the circuit on which the light between the boilers was, was near the door leading from the boiler room to the street, the same door through which Boyer passed in going out to where Tynan was, and in returning to hang up the wire, in attempting to do which he was killed. The lights on this circuit, seven or eight in number, were connected with the current by a plug to this branch block near the door. By removing the plugs the current was cut off and the wires on that circuit became dead. In the engine room was the switchboard from which all current from

the plant could be cut off.   When Tynan took hold of the
wire and received the shock, all the lights in the boiler
room went out.   Sargent, an employe of plaintiff in error
and the only eye-witness to the accident to Boyer, testified
that the lights from the engine room shone through the
door at the end of the passageway between the boilers and
lighted it up to some extent.   He says he saw Boyer at-
tempt to take down the extension "and it seemed to draw
him right up there.   *   *   *   He was reaching for the
plug; he knew enough not to take hold of the wire."

We do not think the contention of plaintiff in error that
Boyer's death resulted from an assumed risk is sustained
by the proof.   The crossing of wires outside the building
where Boyer was employed by which a powerful current of
electricity was diverted and brought into the building on
wires not intended to carry a dangerous current, was not
one of the ordinary and usual incidents of the business, nor
does the proof show deceased knew of the cause nor the ex-
tent of the danger when he attempted to remove the ex-
tension wire.   "An employe does not assume all the risks
incident to his employment, but only such as are usual,
ordinary, and remain so incident after the master has taken
reasonable care to prevent or remove them, or if extraordi-
nary, such as are so obvious and expose him to danger so
imminent that an ordinarily prudent and careful man
would anticipate injury as so probable that in view of it he
would not enter upon or remain in the employment."   C.
& A. R. R. v. House, 172 Ill. 601.   The servant has a right
to assume that the master has and will continue to perform
the duty he owes the servant to use the care and vigilance
required by law to furnish and keep the place where the
employe is required to work reasonably safe.   "It is these
risks alone, which cannot be obviated by the adoption of
reasonable measures of precaution by the master, that the
servant assumes.   The law is, that the servant does not
assume risks that are unreasonable or extraordinary; nor
risks that are extrinsic to the employment; nor risks of the
master's own negligence."   City of LaSalle v. Kostka, 190
Ill. 130.

While the proof shows men had received shocks from the wire that caused Boyer's death two or three days before his death occurred, and that Boyer knew of this, it further shows the shocks were not of a serious nature before the one received by Tynan, and further, that the conditions which caused these shocks to the men were not known to any one whose employment was inside the building until after Boyer's death. The fact that persons handling the wire received slight shocks, might indicate that the insulation on the wires was worn and defective without apprising one of the fact that they had come in contact with a wire outside, which was carrying a powerful current. In Consolidated Coal Co. v. Haenni, 146 Ill. 614, the court in discussing the question of the right of a person to recover for an injury received while using machinery which the injured party knew to be defective, said, that before he could be held to assume the risk incident to its use, "Not only the defects, but the dangers must be known to him." This language was quoted with approval in Union Show Case Company v. Blindauer, 175 Ill. 325.

The second proposition urged by plaintiff in error as ground for reversal of this judgment is, that Boyer was guilty of contributory negligence. The line of distinction between what is an assumed risk and contributory negligence is not always clear and well defined. Some authorities use the terms interchangeably, while others endeavor to preserve the distinction. Thompson in his work on Negligence, vol. 4, sec. 4611, says: "The two subjects lie close to each other and in some cases blend; but in other cases they are distinct subjects." The rule is that whether the plaintiff, or the person in charge, on account of whose death or injury the suit is brought, was negligent, is a question of fact to be determined by the jury. In Wabash Ry. Co. v. Brown, 152 Ill. 484, it was held that there is an exception to this rule "where, from the facts admitted or conclusively proven, there is no reasonable chance of different reasonable minds reaching different conclusions." Under such circumstances it was held negligence may be-

come a question of law.   This doctrine has been cited ap-
provingly in many subsequent cases.   In Block v. Swift &
Co., 161 Ill. 107, it was said:   " If negligence may or may
not result from the facts proved, the question is for the
jury; but if a conclusion of negligence necessarily results
from the facts, the court may say, as a matter of law, that
such facts establish negligence."   In West Chicago St. Ry.
Co. v. Liderman, 187 Ill. 463, the Supreme Court quoted
with approval the following from Beach on Contributory
Negligence:   "When facts are unchallenged, and are such
that reasonable minds could draw no other inference or
conclusion from them than that the plaintiff was or was
not at fault, then it is the province of the court to deter-
mine the question of contributory negligence as one of law,
and when the case is all against the plaintiff there may
properly be a non suit; but in the language of Mr. Field,
' to justify a non suit on the ground of contributory negli-
gence the evidence against the plaintiff should be so clear
as to leave no room for doubt, and all material facts must
be conceded or established beyond controversy.' "   The evi-
dence in this record does not bring the case within the rule
that would justify a trial court in determining as a matter
of law that the deceased was guilty of contributory negli-
gence.   It may be, if it appeared from the evidence that he
knew the actual conditions as they existed at the time,
it would have been negligence in him to have attempted
to remove the extension plug without having first discon-
nected the circuit at the branch block.   But the evidence
is that he did not know the powerful current from the wire
outside was passing over the wires in the boiler room.
This discovery was made after his death.   The slight shocks
to men before, and the severe shock to Tynan the day of,
and just a few minutes before, Boyer's death, was sufficient
to and did cause him to conclude that the wire was unsafe
and should be removed.   The nature and extent of the
danger he did not know however.   Whether he acted with
due care and caution under the circumstances was a ques-
tion of fact for the jury.   The mere fact that Tynan re-

ceived a severe shock would not necessarily prove that a deadly current was passing over the wire. Before that time other men had received shocks not of a serious nature from the same wire. The proof shows, and it is also a matter of common knowledge, that some men are much more sensitive to the effects of electrical currents than others. The proof further shows that it would be safe to handle or move the porcelain plug with which the extension was made if the plug was in good condition, even with the high voltage on the wire, if in doing so the hand came in contact only with the plug and hard rubber key, both being non-conductors. The evidence further shows that immediately after the accident to Boyer, it was discovered that a portion of the porcelain plug was broken off, exposing the head of a screw which held the two parts together. While the evidence on that subject is not clear, it tends to show that Boyer did not take hold of the wire but of the plug, and it is entirely possible that in doing so his hand came in contact with the exposed screw-head. There is no evidence as to how long the broken condition of the plug existed before the accident. If the duty of the deceased to repair inside, included lamps as well as machinery which was his especial charge, before he could be held to be negligent in failing to have the defective plug replaced by a perfect one, it must appear that he either knew of the defect, or that it had existed for such a length of time that he ought to have known it. For aught that appears the plug was in good condition before Boyer received the shock. It may have been broken at the time Tynan received the shock or at the time Boyer was killed. At any rate, there is not the slightest evidence that Boyer knew or might reasonably have known of the defect. If it be said that he should have observed if it was broken at the time the accident occurred to Tynan, the answer is the light in the passageway where the plug was, was poor. It was only such as came through the doorway from the engine room and would not afford a very good opportunity for seeing such an object. It is argued he knew about the

branch block in the boiler room, and that on the removal of the plug from it, it would shut off the current from the wire and the entire circuit it was on; also that he knew how, by means of switches in the engine room, all current from the plant could be shut off, and that it was negligence in him not to have adopted one of these methods before attempting to remove the extension wire. Where two methods of doing a thing exist, each of which is supposed to be, and so far as known is, reasonably safe for doing the work, it cannot be said necessarily that a party injured by reason of some unknown defect in the appliances used in the method adopted, was negligent in not adopting the other method.

The proof shows the instantaneous going out of all the lights on a circuit under the circumstances these did when the accident occurred to Tynan, ordinarily indicated that both fuses in the branch block had burned out and the wires were dead; but the evidence further shows that this is not always the case. If one fuse is weaker than the other, it may burn out while the stronger one remains intact. The burning of one fuse will cause the lights on that circuit to go out, but the wire connected by the sound fuse will continue to carry the current. It is argued from this that Boyer, as a man of experience with electrical machinery and appliances, must have known these things and was negligent in attempting to move the wire without first disconnecting it at the branch block or the switchboard in the engine room. We have before stated the evidence tends to show he attempted to do the work, not by handling the wire but by removing the extension plug, which the proof further shows could have been safely handled if it had been in perfect condition, without resort to the use of a wooden ladder, or without putting on rubber gloves, which the superintendent testified the plant was supplied with, but which Sargeant, who was in the employ of plaintiff in error in the plant two and a half years and was working there at the time Boyer was killed, says he never saw there. Under all the circumstances, we conclude the question

whether Boyer's negligence contributed to cause his death was properly submitted to the jury to be determined as a question of fact. "Contributory negligence is a want of ordinary care upon the part of a person injured by the actionable negligence of another, combining and concurring with that negligence, and contributing to the injury as a proximate cause thereof, without which the injury would not have occurred." 2 Am. & Eng. Ency., 371. Briefly defined, it is a failure to exercise ordinary care. What is ordinary care must necessarily vary with the surrounding circumstances. Our Supreme Court has defined it to mean, that care which a reasonably prudent and cautious person would take to avoid injury, under like circumstances. Chicago City Ry. Co. v. Dinsmore, 162 Ill. 658; Chicago, St. Louis & Pittsburg R. R. Co. v. Hutchinson, 120 Ill. 587. When the defendant is guilty of negligence, ordinary diligence is all that is required of plaintiff to entitle him to recover. I. C. R. R. Co. v. Shultz, 64 Ill. 172. It will not do in determining whether deceased was negligent, to consider his acts in connection with conditions not known to exist until after his death. This question can only be properly determined from conditions as they appeared and so far as known at the time. In vol. 1 of Thompson's Commentaries on The Law of Negligence, sec. 173, it is said: "It must here be remembered that what is termed ordinary care is not an absolute, but a varying circumstance, depending upon the existence of each particular case, always proportioned to the risk to be avoided. 'The test of contributory negligence or want of due care is not always found in the failure to exercise the best judgment, or to use the wisest precaution. Some allowance may be made for the influences which ordinarily govern human action, and what would, under some circumstances be want of reasonable care, might not be such under others;' but it is to consider whether a prudent person, in the same situation and having the knowledge possessed by the one in question, would do the alleged negligent act." In Laufer v. Bridgeport Traction Co., 68 Conn. 475 (37 L. R. A. 533), it is said: "In

every case where the inquiry is whether or not a party has acted with due care, the trior must apply the standard of the ordinarily prudent man. What would a man of ordinary prudence have done situated as this party was? And, in answering that question, it is the duty of the trior to take into consideration every known circumstance which might rightfully or reasonably have influenced his conduct in that situation." The Supreme Court of Nebraska said in Brotherton v. Manhattan Beach Improvement Co., 33 L. R. A. 598: "Negligence is the failure to exercise such care, prudence and forethought as, under the circumstances, duty requires should be given and exercised. It is the omission to do something which a reasonable man, guided by those considerations which ordinarily regulate the conduct of human affairs, would do, or doing something which a prudent and reasonable man would not do." In Labatt on Master and Servant, the author says (vol. 1, sec. 328): "The standard which a servant is, like any other person, required to satisfy in doing the acts which a performance of his duties involve, is that expressed by the phrases 'ordinary care' or 'ordinary care and diligence,' or 'reasonable and ordinary care,' or 'ordinary diligence or common prudence.' He is bound to exercise that degree of care which a reasonably prudent person would use in order to avoid being injured, or which might, under the given circumstances, be reasonably expected of an ordinarily prudent person." In Cicero St. Ry. Co. v. Meixner, 160 Ill. 320, it was held that whether one has exercised due care and caution is to be determined from the particular circumstances in each case. In N. C. S. R. R. Co. v. Eldridge, 151 Ill. 542, our Supreme Court said: "Where the party injured, at the time of the injury, is in the exercise of ordinary care, no contributory negligence is legally attributable to him, although he may not have been in the exercise of the highest degree of care." In addition to the other facts and circumstances in evidence, the natural instincts of self-preservation possessed by all normal human beings in the possession of their faculties, and the desire to avoid physical pain and death when it can

be done at discretion, are also elements proper to be considered by the jury. C. & E. I. R. R. Co. v. Hines, 132 Ill. 161; Broadbent v. C. & G. T. Ry. Co., 64 Ill. App. 231.

It is not denied that plaintiff in error was negligent in allowing the two wires on the same pole, one carrying a high and the other a low current, to come in contact. The question whether Boyer was guilty of contributory negligence was one of fact properly submitted to the jury. The jury found against plaintiff in error on this proposition, and we do not think it can be said the verdict is so contrary to the evidence in that regard as to justify a reversal on that ground.

Complaint is made of instructions one and two given for defendant in error. The first instruction is admitted to state a correct proposition of law, and we think it not inapplicable to the facts proven, nor misleading to the jury.

Defendant in error's second instruction related to the measure of damages, and as offered was a copy of an instruction approved in I. C. R. R. Co. v. Gilbert, 157 Ill. 354. It told the jury if they found from the evidence that the defendant was guilty of the negligence charged in the declaration, and that said negligence caused the death of Boyer, then plaintiff was entitled to recover for the benefit of the next of kin of the deceased, such pecuniary damages as the proof showed they had sustained. The court modified the instruction by inserting after the first clause, "and that the deceased, Boyer, was in the exercise of ordinary care for his own safety at the time in question." The complaint made of this instruction is that it omits the element of assumed risk, which was one of the defenses in the case. In Terra Cotta Lumber Co. v. Hanley, 214 Ill. 243, the Supreme Court held two instructions given for plaintiff were erroneous for the reason that they omitted the element of assumed risk, which was one of the defenses. The first of the instructions in that case, was that if the jury believed from the evidence plaintiff had made his case as laid in his declaration or in some count thereof, they should find for the plaintiff. The second was that, if the jury believed

from the evidence plaintiff, while in the exercise of ordinary care, was injured by or in consequence of defendant's negligence as charged in the declaration, then the jury should find the defendant guilty.   The negligence charged in that case was the improper construction and unsafe condition of a scaffold on which appellee was at work, when it fell and injured him, and the Supreme Court say the evidence offered by defendant tended to show the plaintiff assisted in the construction of the scaffold and knew as well or better than defendant its condition, and further say the evidence fairly tended to support the view that the risk of being injured by the falling of the scaffold was assumed by the plaintiff.   The Supreme Court held the instructions for plaintiff eliminated the question of assumed risk, which was one of the defenses relied on, and say : "The jury, if they followed either of said instructions, might have found the averment of one or both counts of the declaration to have been fully established by the evidence and based their verdict thereon, although they believed, from the evidence, the plaintiff assumed the risk of being injured from the falling of the said scaffold."   We do not think it can be said that the evidence in this case fairly tended to show that deceased's injury resulted from one of the ordinary or usual risks of the business assumed by him when he engaged in the employment he was in at the time of his death.   In so far as the testimony tended to support the defense of assumed risk, the most that can be said of it is that it did no more than tend to show that deceased, with knowledge that the wire was dangerous, attempted to handle and remove it.   This would constitute no more than contributory negligence, and upon that proposition the jury were elaborately instructed.   Appellant's first instruction told the jury that a servant assumed all ordinary risks of his employment, and in addition thereto, all special risks known by him or which he could have known by the exercise of reasonable diligence, and that if Boyer knew the wire which killed him was dangerous, and that handling it would be attended with danger, then he

must be held to have assumed the risk and no recovery could be had. Eighteen other instructions were given for appellant, and the jury were told repeatedly that if Boyer knew how to render the wire harmless by removing the plugs from the switchboard, or if he knew of and could have adopted a safe method of handling the wire, but chose a dangerous one, or if he knew it was defective and heavily charged with electricity before attempting to remove it, or if he placed himself voluntarily in a well-known place of danger, or if he did not use the care and caution of an ordinarily prudent man, then in any of these events there could be no recovery. The jury were further told by instructions for appellant that the plaintiff was required to prove not only defendant's negligence, but that the deceased could not, by the exercise of ordinary care, have avoided the injury. The instructions given for defendant cover seven printed pages of the abstract, and told the jury over and over that it was necessary to authorize a verdict of guilty that plaintiff should prove that deceased was in the exercise of ordinary care and caution for his safety; also that if he knew of the defective or dangerous condition of the wire before or at the time he attempted to remove it, there could be no recovery. In view of the evidence, and taking the instructions altogether, we are of opinion the omission of the element of assumed risk from appellee's second instruction, supplied as it was by appellant's first instruction, was not so prejudicial to appellant as to require a reversal of this judgment. The court refused six instructions asked by appellant, and this is assigned for errror. We are of opinion that all of them proper to be given were covered by the nineteen instructions given on appellant's behalf. Believing there is no reversible error in the record, the judgment is affirmed.

*Affirmed.*