Joseph H. Strong, Administrator, etc., v. North Chicago Street Railroad Company.

Gen. No. 11,303.

1. PASSENGER AND CARRIER—*when relation of, begins.* The relation of passenger and carrier begins when one puts himself in the care of the carrier, or directly within its control, with the *bona fide* intention of becoming a passenger, and is accepted as such by the carrier, and of necessity the existence of the relation is commonly to be implied from the attending circumstances.

2. LICENSEE—*duty of carrier toward.* A carrier owes no duty to a mere licensee other than to refrain from wilfully or wantonly injuring him.

Action on the case for death caused by alleged wrongful act. Error to the Superior Court of Cook County; the Hon. MARCUS KAVANAGH, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1903. Affirmed. Opinion filed October 4, 1904.

**Statement by the Court.** This is a writ of error prosecuted to reverse the judgment rendered against plaintiff in error in a suit to recover damages from defendant in error for negligently causing the death of plaintiff's intestate, Harry Vincent Brown. At the end of the trial the court directed a verdict in favor of defendant, upon which judgment was duly entered.

Deceased was killed while riding upon one of defendant's street cars as the result of a collision between it and another of its street cars. The evidence shows that the deceased, a boy fifteen years and two months old, living with his mother, was employed as an errand boy at Wabash avenue, south of Monroe street, in Chicago, and on the evening of the accident, December 23, 1897, was sent by his employer with a package of goods to 374 LaSalle avenue in said city. Defendant at this time operated a double track street railway, extending from Lake and State streets northward on North State street to Division street, thence two blocks west to Clark street. It likewise operated a double track line on Indiana street, which is five blocks north of Lake street, and connected at Indiana street with the State street line. The cars operated on these lines were pro-

pelled by electricity. The east track on State street was used for north-bound and the west track for south-bound cars, and the north track on Indiana street was used for west-bound and the south track for east-bound cars. The collision by which deceased was killed was between one of defendant's north and one of its south-bound cars at the intersection of State and Indiana streets, the north-bound car turning, on the switch at Indiana street, westward and colliding with the south-bound car which was then passing over the switch. Deceased was standing upon the step of the north-bound car and was caught and crushed to death between the two cars. On the evening of the accident a cable line also operated by defendant was blocked in consequence of a fire in the business part of the city and as a result many people accustomed to ride home on the cable line made use of the State street line. The time in question was about six-thirty in the evening, and with the addition of the cable-line passengers, the north-bound cars on the State street line were greatly overcrowded, so that persons desiring to ride north on them went a block or more north from Lake street and met the cars while going south in order to secure a passage, as a result of which, the cars were filled inside and outside before they reached Lake street, where they were switched from the south to the north-bound track and started on their north-bound trip.

The evidence does not show the movements of the deceased after leaving his employer's place of business until he came to the intersection of State and Water streets, one block north of Lake street. What occurred from that time on is described by the witness Thomas Ferguson, who was forty-five years of age and accustomed to ride home on this line of cars at about the same time every evening. On this particular evening he reached Lake street as usual and with others proceeded north to board a south-bound car. Two of them which passed him were too crowded for him to get a foothold anywhere. The only place he could find upon the third car coming south (the one in question) was on the step at the northwest corner of the car. This was

on the rear and the west side of it as it proceeded south, but the front end when traveling north. It was an ordinary closed street car with a platform at the front and at the rear end. On each side of the platform there was a step eight or ten inches lower than the platform. The step was about ten or twelve inches wide and extended the full width of the platform from the dashboard to the body of the car. The car was equipped with wire gates resting upon these steps and extending the full width of the platform on the side of the car next to the adjoining track. Upon the south-bound car the gates were placed on the east side but when the cars reached the southern terminus of the line the gates were transferred from the east to the west side. They were for the purpose of preventing entrance to a car from the side where they were placed. These gates on the car in question had been transferred from the east to the west side before it reached the State street bridge, which is about a block and a half north of Lake street. Ferguson, who had proceeded north of Lake street in order to board a car coming south, seeing no other place where he could board the car, stepped up and stood on the north step on the west side of the car outside of the gate. The top of the gate at a point nearest the body of the car was about even with a man's shoulder while standing on the car platform, and the farther end, where it connected with the dashboard, was about two feet lower. There was enough room outside of the gate for Ferguson to secure a foothold and he stood there holding on to the handhold on the body of the car while it proceeded south to Lake street, and passed over the switch to the east or north-bound track, and proceeded thence on its journey north. When the car was at about Water street, one block north of Lake, deceased stepped upon the same step in front and alongside of Ferguson and stood with him outside the gate. When the car was about at the bridge Ferguson discovered that there was little room between the car and the uprights of the bridge and he then raised the gate, which was held in place on the step by a pin extending down in a socket in

the step, and pushed the gate in toward the platform, thus making more room for him and the boy to stand on. In this manner they passed the bridge in safety, although the uprights scraped against Ferguson's body. On account of the crowding of the car the conductor, when it started north, was unable to even secure a foothold upon it and he ran along its east side from Lake street to the bridge, where he succeeded in placing himself on the step at the front end on the east side of the car and rode in that position across the bridge. He then told the motorman to stop the car and it was stopped. Three men were standing on the east side to which he hung in crossing the bridge. They stepped off to enable him to get on, and he crowded through the platform until he stood immediately inside of the door on the floor of the car, which was six inches higher than the platform. From this vantage ground, with his hands above the passengers' heads, he collected all the fares on the platform, which he estimated at fifteen, except the fares of deceased, Ferguson and the three men who stood on the east step, and he said he intended to return after getting the fares in the car to collect the fares of the three passengers on the east step. He testified that he did not see either deceased or Ferguson, who were standing on the west step. He then worked his way towards the rear of the car, which, after the conductor had boarded it, proceeded on its way and deceased and Ferguson retained their position on the step. Before, however, the conductor had returned to the front platform to collect further fares the car reached Indiana street and for some unexplained reason turned west on the Indiana street line. At the same moment there was a car proceeding south on the west track, and the northwest corner of the car in question collided with 'the northeast corner of the south-bound car, crushing deceased so that he died almost instantly.

JAMES C. MCSHANE, for plaintiff in error.

JOHN A. ROSE and LOUIS BOISOT, for defendant in error; W. W. GURLEY, of counsel.

Mr. Presiding Justice Stein delivered the opinion of the court.

First.   Under the foregoing statement of facts it is not denied that if deceased was a passenger on defendant's car plaintiff in error made out a *prima facie* case and the court erred in directing a verdict of not guilty.   The question therefore is, was deceased a passenger?·  "The relation of carrier and passenger begins when one puts himself in the care of the carrier or directly within its control with the *bona fide* intention of becoming a passenger and is accepted as such by the carrier."   R. R. Co. v. Jennings, 190 Ill. 478.

Assuming (as to which the proof is not altogether certain) that the boy boarded and stood on the step of the car outside of the gate with the intention of becoming a passenger, it remains to be determined whether he put himself in the care of defendant and was accepted by it as a passenger.   There is but seldom any formal act of delivery of the passenger's person into the care of the carrier or of acceptance by the carrier of one who presents himself for transportation; hence the existence of the relation is commonly to be implied from the attending circumstances. R. R. Co. v. Jennings, *supra.*   Had the boy stood inside of the car or on either of the platforms or at any place which persons riding on the cars are usually invited or permitted to occupy, there can be no doubt but that an implication would have arisen that the defendant had accepted him as a passenger.   He stood at a place where it was not only inconvenient and highly dangerous for him to stand, but where the gate plainly indicated that persons should not stand at all, and from which he could not make his way into the car so long as the gate was in its place.   Moreover, the conductor testified (although he was not positive) " that there is a printed rule in our (defendant's) rule book prohibiting any one to ride there."   Both deceased and Ferguson, his companion on the step, appear to have known that it was not a proper place for them to stand.·  When the car stopped on the incline of the viaduct, Ferguson said to the boy: " I bet we will have to get off here."   If the

conductor had seen them he would, as he said at the trial, have " stopped the car and ordered them off." Under these circumstances we are of opinion that deceased had not put himself in defendant's care. I. C. R. R. Co. v. O'Keefe, 168 Ill. 115.

But even if he had, there is an entire absence of proof that the defendant accepted him as a passenger. Neither he nor Ferguson was seen by the conductor. They paid no fares and were not asked for any. The conductor, not having seen them, could, of course, not have intended to demand it from them. It is argued, however, that the conditions were such that he must have seen them and that the question whether he did or not should have been submitted to the jury. The conductor testified he did not see them; that he never looked outside of the gate for passengers; and he was a witness called by plaintiff, who thereby vouched for his credibility. Derrick Co. v. Hall, 208 Ill. 597. True, he might have contradicted him by other witnesses, but no such attempt was made.

It is also argued that on account of the excessive overcrowding of the car, caused by the temporary blocking of defendant's other street car line, its rule and practice forbidding persons to get on the car outside of the gate was relaxed on this occasion. No proof whatever of this assertion was offered. Nor is there any proof that persons got on or rode or were allowed to ride there at any other time. No circumstances are shown which would warrant the inference that the defendant had accepted deceased as a passenger.

Second. It is further contended that even if deceased was not a passenger, still it was defendant's duty to exercise ordinary care for his safety and that it failed in such duty, and reliance is had upon R. R. Co. v. Gruss, 200 Ill. 195, and R. R. Co. v. Kotoski, 199 id. 383. These cases, we think, are not in point. In the case at bar there is no proof tending to show defendant's consent, express or implied, to the use of the step on which deceased was standing. On the contrary, the position of the gate was such as to be equiva-

252    APPELLATE COURTS OF ILLINOIS.

VOL. 116.] People v. Board of Police Pension Fund Commissioners.

lent to a public declaration by the company that persons should not get upon the step or make any use of it. We are inclined to the opinion that deceased was a trespasser, but prefer to rest our decision on the ground that at best he was no more than a mere licensee, to whom defendant owed no duty except to refrain from wilfully or wantonly injuring him. Gibson v. Leonard, 143 Ill. 182; R. R. Co. v. Jones, 163 id. 167; R. R. Co. v. Eicher, 202 id. 556.

The judgment of the Superior Court is affirmed.

*Affirmed.*