**William Hickey, Administrator, Plaintiff in Error, v. Chicago City Railway Company, Defendant in Error.**

**Gen. No. 14,324.**

1. PRACTICE—*use of interpreters.* A court should not be required or the jury be allowed to guess the meaning of a foreigner undertaking to testify in the English language; an interpreter for such a witness should be used, even at the expense of loss of time to the court.

2. INSTRUCTIONS—*how uncontroverted facts should be treated.* Uncontroverted questions of fact should not by instructions be treated as though they were in dispute, as such a treatment is likely to confuse the jury.

3. INSTRUCTIONS—*when requiring proof of negligence erroneous.* It is error to instruct the jury that a plaintiff is required to prove the negligence of the defendant by a preponderance of the evidence before he can recover in a case where such negligence is conceded by the defendant.

4. PASSENGER AND CARRIER—*when presumption of negligence arises.* Where a car or train of a carrier is derailed or collides with another of its trains, or with some object under the control of the carrier, a presumption of negligence arises and places upon the carrier the burden of exoneration.

5. PASSENGER AND CARRIER—*when relation established.* If a person upon a traction car gives to a conductor a transfer slip and receives from him another, then the relation of passenger and carrier is established.

6.  PASSENGER AND CARRIER—*non-applicability of doctrine of assumed risk.*  A passenger in taking a place of danger does not thereby contract to discharge the carrier from the duty it owes him of protection from its own acts of negligent operation of defective cars or the operation of cars upon defective rails.

7.  PASSENGER AND CARRIER—*what not contributory negligence.*  A passenger may assume that a carrier will in nowise be negligent and he may govern his conduct accordingly and if his conduct be such that but for the negligence of the carrier he would not have been injured, contributory negligence will not be charged against him.  Strong v. N. C. St. R. R. Co., 116 Ill. App. 246, distinguished.

8.  PASSENGER AND CARRIER—*when negligence of former does not amount to contributory negligence.*  If a passenger takes a position of danger and is thereby negligent, such negligence does not amount to contributory negligence which will bar his recovery if it does not proximately result in the injury.

9.  PASSENGER AND CARRIER—*what not necessary to establishment of relation.*  The existence of the relation of passenger and carrier may be implied or inferred as a matter of law from the facts and circumstances in evidence; assent by the carrier is not essential; indeed, the relation may under a particular state of facts be established notwithstanding the express dissent of the carrier.

10.  PASSENGER AND CARRIER—*what does not show non-existence of relation.*  A mere refusal to accept a fare or a transfer does not conclusively preclude a traveler as to the status of a passenger.

11.  PASSENGER AND CARRIER—*when relation established.*  Held, in this case, that the plaintiff's intestate was a passenger, it appearing from the evidence that such intestate had taken passage upon one of the defendant's lines, had transferred to another of the defendant's lines, had been confronted by a condition of overcrowded cars and had taken passage upon such over-crowded cars, assuming a place of danger; it being held, further, that even the refusal of the carrier to accept a transfer ticket and the fact that the conductor ordered the intestate to leave his position of danger and get off the crowded car (the car not being stopped for that purpose), would not, if such facts were established by the evidence, conclusively show the non-existence of the relation of passenger and carrier.

12.  NEGLIGENCE—*definition of.*  Negligence is the violation of the duty enjoining care and caution in what we do.  The duty, however, is a relative one and where it has no existence toward a particular party, there can be no such thing as negligence in the legal sense of the term.

Action in case for death caused by alleged wrongful act.  Error to the Superior Court of Cook county; the Hon. ROBERT W. WRIGHT, Judge, presiding.  Heard in the Branch Appellate Court at the

March term, 1908. Reversed and remanded. Opinion filed March 9, 1909. Rehearing denied March 30, 1909, and additional opinion filed. April 30, 1909, by stipulation the order of March 9, 1909, was vacated and writ of error dismissed and opinion of March 9, 1909, recalled and cancelled. December 29, 1909, on the court's own motion so much of the order of April 30, 1909, as provided that the opinion be recalled and cancelled, was vacated.

Statement by the Court.  Plaintiff in error, plaintiff below, prosecutes this writ of error to reverse a judgment rendered against him. The judgment was rendered in a suit he brought in the Superior Court of Cook county against the Chicago City Railway Company, defendant in error, to recover damages for its negligence which caused the death of his intestate. The defense in the Superior Court was twofold: that the decedent, James Hickey, contributed, by his own negligence, to the cause of injury which occasioned his death and that, at the time of his injuries, he was a trespasser upon the company's street car so that the company owed him no duty, except not to wilfully or wantonly injure him.

At about six o'clock P. M. on Sunday, August 20, 1905, James Hickey, the deceased, was on a northbound Halsted street car. At the Halsted street bridge this car jumped off the track and ran into a southbound car of the defendant, on its other track, and, by that collision, the lower parts of the legs of the decedent, James Hickey, were crushed so that, as a result thereof, he died the next day.

The car, upon which Hickey stood, was clearly in an overcrowded condition. The seating capacity thereof was fifty-four persons and there were upon it, when the accident occurred, about 140 passengers. The evidence shows that, besides the seats being filled, people stood in the aisles, on the platforms, on the steps and elsewhere on the car, although there was one witness who testified that while he himself, as a matter of choice, stood on the steps of the car three or four more could have gotten inside the front vestibule without crowding. The record shows there was an iron

running across each of the ends of the car, in front and in the rear, outside and below the dashboard, which irons were called angle-bars. Two men stood on the rear angle-bar, of whom only one testified. He informs us he paid the conductor his fare. The motorman testified that at one time four men stood on the front angle-bar but, at his suggestion, made to all of them, that there was danger because the car did not clear over three inches on the bridge, two of these had jumped off before the collision. The motorman is not contradicted.

The decedent was a young man twenty-four to twenty-five years of age, healthy and active, weighing about 160 pounds. He was one of those who remained standing on the front angle-bar, in front of the motorman, toward the northwest corner of the car. He was holding on inside the vestibule with his arm through a window. There is conflict in the evidence as to the length of time he stood there, previous to the collision, whether from Fifty-first street or from Archer avenue. The fact that others than the decedent stood on the front angle-bar was elicited on cross-examination of a witness produced by defendant, although defendant had obtained an erroneous ruling of the court excluding evidence that other persons stood on the front angle-bar. The tendency of such evidence was to show assent to persons remaining, as passengers, on the angle-bars.

It is undisputed that decedent had a ticket of the defendant, in the shape of a transfer slip from a cross-line, which entitled him to be carried on this Halsted street line, and that he wished to have this transfer slip exchanged for another that would evidence his right to be carried beyond the place where this car stopped, by another car. There is a square conflict in the evidence whether the conductor accepted or refused the transfer which Hickey had and offered in exchange for another. On the one hand it is testified the conductor accepted the transfer slip and gave decedent another as he desired. On the other hand the

conductor testified he refused the transfer slip, saying: "I am not collecting a fare on outside of the vestibule." The conductor testified, also, that: "He [decedent] and several others held out transfers and he said: 'Give me a transfer,' and I refused," and that: "I told them to get off, to get off the car, that it was dangerous out there." He, the conductor, further testified that he refused to accept fares from any of those standing on either of the angle-bars. But there is no evidence of any effort to compel any of them to get off the car or of any stoppage of the car to afford any of them an opportunity to safely alight. They all, apparently, continued to ride upon the angle-bars until the collision, except the two who stepped off at the request of the motorman. There is evidence, both circumstantial and direct, rebutting as well as corroborating the conductor's evidence. As to the rate of speed at which the car traveled there is, also, an irreconcilable conflict; but this issue appears to us immaterial in this case. There is also evidence tending to show (not very clearly, perhaps) that the conductor had remained in the rear and had made no round for the collection of fares, so as to be able to observe decedent while he stood on the angle-bar. One of the most important witnesses frequently did not understand examining counsel and sometimes examining counsel, the court and, evidently, the jury did not understand him. Apparently he was a foreigner. When a foreigner, not conversant with our language, testifies and it appears that the facts can better be elicited by the use of an interpreter a competent interpreter should be used, even at the expense of some loss of time. It is not desirable that court, jury and counsel should guess at the meaning of what a witness is saying or that a witness should guess at the meaning of questions asked of him.

The plaintiff tendered no instructions. Twenty instructions were tendered by the defendant and all given; among these were the following:

"2. The jury are instructed that whether you believe from the evidence that the defendant's servants were negligent on the occasion in question or not, yet if it appears from the evidence that the deceased would have avoided the injury in question by the exercise of ordinary care for his own safety, and that he did not exercise such care, and that such want of care on his part caused or contributed to produce the injury in question, then the plaintiff cannot recover in this case, and your verdict should be not guilty."

"8. The jury are instructed that the plaintiff is required by law to establish, by a preponderance of the evidence, that the cause of the alleged injury was the negligence of the defendant charged in his declaration, before he can recover. If the plaintiff in this suit has not so proved by a preponderance of the evidence some one or more of said charges of negligence, or if the evidence is evenly balanced so that the jury are unable to say on which side is the preponderance of the evidence, or if the preponderance of the evidence is in favor of the defendant, then in either of these cases, the verdict should be not guilty. By preponderance of evidence, the court means the greater weight of the evidence."

"9. The court instructs the jury that the burden of proof is not upon the defendant to show that it is not guilty of the specific negligence charged in the declaration, or in some count thereof, but the burden is upon the plaintiff to prove that the defendant is guilty, and also to prove that the deceased himself was in the exercise of ordinary care for his own safety, and that this rule as to the burden of proof is binding in law, and must govern the jury in deciding this case. The jury have no right to disregard said rule or to adopt any other in lieu thereof, but in considering the evidence and coming to a verdict, the jury should adhere strictly to this rule."

"10. If you believe from the evidence that on the occasion in question there was any want of ordinary care for his own safety on the part of the deceased, which contributed or helped to produce the alleged injury in question, then the plaintiff cannot recover, and your verdict should be not guilty."

"11.  The court instructs the jury that the relation of passenger and carrier does not make the carrier an insurer of the safety of the passenger.  The carrier is not required to protect passengers against dangers to which they may be exposed as a result of their own want of care.  Even if the jury believe from the evidence that at the time and place in question the legal relation of passenger and carrier existed between deceased and defendant, yet, if you further believe, from the evidence, that at and just before the time of the alleged injury to deceased, he was riding on the outside of the car in question, and that in placing himself on the outside of said car he did not exercise ordinary care for his own safety, and that, as a result of such want of ordinary care on his part, he sustained the alleged injuries in question, then you should find the defendant not guilty."

"12.  The court instructs the jury that where a man voluntarily places himself in a position which he knows to be dangerous, or which by the exercise of ordinary care and attention he would have known to be dangerous, he is in law held to have assumed the risk of any injury sustained by him by reason of such act, and if the jury believe from the evidence that the deceased voluntarily placed himself on the front end, and on the outside of the car, and that said position was dangerous, and that he knew, or by the exercise of ordinary care and attention would have known it to be dangerous, and that he was injured as the result of so doing, then the plaintiff cannot recover in this action against the defendant, and you should find the defendant not guilty."

"13.  The court instructs the jury that by contributory negligence, in law, is meant the doing of some negligent act or thing by a party injured which contributes to or helps to bring about the result or injury complained of.  If you believe, from the evidence, that deceased was negligent and that such negligence was contributory to the injury in question, then and in such case you should find the defendant not guilty."

WHITMAN & HORNER, for plaintiff in error.

WEST, ECKHART & TAYLOR, for defendant in error.

MR. JUSTICE CHYTRAUS delivered the opinion of the court.

Plaintiff in error questions the correctness of the giving of many of the instructions herein. A consideration of the principles of law applicable to the various aspects of the case will enable us more readily to determine upon the correctness and applicability of the principles of law in these instructions. There are several distinct issues or propositions of law and of fact involved. Some uncontroverted propositions of fact seem, in the instructions, to have been treated as controverted. Such instructions should never be offered by counsel, as they clearly have a tendency to confuse and to mislead the jury as to what the facts are, in some instances even to the extent of requiring a reversal. The defendant's negligence is here undisputed. The injury was caused by the fact that the car jumped off the track and collided with another car. There is no attempt to exonerate the company from responsibility for this occurrence by showing that it was caused by something beyond its control or that the occurrence could not have been prevented by the exercise of the highest degree of care consistent with the practical operation of the road, which is the degree of care required of a carrier for its passengers. Where a car or train of a carrier is derailed or collides with another of its trains, or with some object under the control of the carrier, a presumption of negligence arises and places upon the carrier the burden of exoneration.

1. If decedent gave the conductor a transfer slip and received from him another, then the relation of passenger and carrier was established. In such event the question remains, however, whether decedent, in taking the place he did take upon the car, was guilty of contributory negligence so that thereby he relieved the defendant from responsibility for its negligence.

In view of the arguments and the facts of this case, this remaining question is again divisible into two parts, viz.: (a) Was there on the part of the decedent, in occupying that place, an assumption (using that term in its contractual sense as used in connection with the relation of master and servant) of the risk of this carrier of passengers injuring decedent, a passenger, by its negligence? and (b) Can, in contemplation of law, negligence be attributed to a passenger injured by his carrier's negligence, where the cause of injury could have been avoided by the carrier exercising ordinary care and when the passenger in nowise participated in or contributed to occasion or bring about the act of negligence itself?

(a)   For two good and sufficient reasons there is no room for the application of the contractual doctrine of assumption of risk in this case, as existing in connection with the relation of master and servant.   In the first place, in that relation, when entering into the contract of employment and as part of that contract, the servant assumes the risks ordinarily incident to the employment which are open and obvious, but he does not assume the risk of injury from acts of negligence by the master.   As to this exception from the risks assumed in that relation our Supreme Court in Hansell-Elcock Foundry Co. v. Clark, 214 Ill. 399, 406, quoted and approved of the following statement: "The rule that the servant assumes the ordinary risks incident to the business presupposes that the master has performed the duties of caution, care and vigilance which the law casts upon him."   As early as in the case of C. & N. W. R. R. Co. v. Swett, 45 Ill. 197, 202, our Supreme Court held:   "The principle, that the master is not responsible for injuries occasioned by one servant to another, is only applicable, as the authorities show, where the injury complained of happens without the fault of the master, either in the act which caused the injury or in the employment of the person who caused it."   Injury by a fellow-servant's

carelessness is one of the risks assumed by the servant. That injury, occasioned through the master's own negligence, is never a risk assumed by the servant is firmly settled in this state. La Salle v. Kostka, 190 Ill. 131, 135; Belvedere G. & E. Co. v. Boyer, 122 Ill. App. 116, 119; Wells v. O'Hare, 209 Ill. 627; Slack v. Harris, 200 Ill. 96, 108; Street's S. C. L. v. Bonander, 196 Ill. 15, 19. In Belvedere G. & E. Co. v. Boyer, Mr. Justice Farmer, now of our Supreme Court, speaking for the court, said: "The servant has a right to assume that the master has performed and will continue to perform the duty he owes the servant to use the care and vigilance required by law to furnish and keep the place where the employe is required to work reasonably safe." In C. & N. W. R. R. Co. v. Swett, *supra,* the court laid it down as a rule with reference to railways, in their relation both to their servants and to their passengers, that (p. 203) "They are bound to furnish a safe road, and sufficient and safe machinery and cars." In the next place, as already stated, the assumption of risk doctrine is one founded upon the implication of a contract. It is too well settled to need the citation of authority that a common carrier cannot, by express contract, relieve himself from liability for damages resulting from his negligence. The law does not permit it, because to so permit is held to be contrary to public policy. As he may not absolve himself from liability for his negligence by an express contract, much less will the law suffer him to escape from the consequences of his negligence by invoking the doctrine of implied contract to aid him. When decedent, being a passenger, took the place he occupied at the time of the collision, he did not thereby contract to discharge the company from the duty it owed him of protection from *its own acts* of negligent operation of defective cars or the operation of cars upon defective rails. There was here no assumption by the decedent of any risk resulting from negligence by the defendant company.

(b)   The next question is whether, he being a passenger, negligence can be attributed to the decedent. Decedent must be regarded as having contributed, by his mere presence where he was, to the *result* of the carrier's negligence upon himself; but he did not contribute in or to the act of negligence or to causing that act. No act of negligence of the decedent either concurred in or co-operated to bring about the defendant's conceded act of negligence. The defendant claims contributory negligence on the part of decedent. But unless we find negligence, under the law, on the part of decedent, there was no contributory negligence. Negligence is the violation of the duty enjoining care and caution in what we do. The duty is, however, a relative one; and where it has no existence toward a particular party there can be no such thing as negligence in the legal sense of the term. Towanda R. R. Co. v. Munger, 5 Denio, 255, 266. In Aurora Branch R. R. Co. v. Grimes, 13 Ill. 585, 588, the Supreme Court said: "The degree of care which the plaintiff is bound to exercise will be found to depend upon the relative rights or position of the parties in relation to the rights exercised or position enjoyed by the plaintiff at the time the injury complained of happened."

The reason given in the books why, in cases of mutual, concurring negligence, neither party can maintain an action against the other, is not that the wrong of the one is set off against the wrong of the other; it is that the law cannot measure how much of the damage suffered is attributable to the plaintiff's own fault and, therefore, cannot admeasure the extent of the damage rightfully attributable to the defendant. In other words, in such case, the damages are not measurable by any standard known to the law. If plaintiff is not in fault, he can recover. The act of the plaintiff, before it will bar recovery, "must not only have contributed to the accident, but it must have been an act of such a nature as to be imputable to the plaintiff as a fault," the particular relation of the

parties, of course, being considered. 2 Thompson on Negligence, 1150, citing Wyandotte v. White, 13 Kan. 146.

Dr. Bishop in one of his excellent works says: "If, while one is negligent,—perhaps the expression should be, in a state of negligence,—another negligently employs an independent force, which, availing itself of the occasion afforded by the former's negligence, works a harm not its natural and probable consequence, but an independent harm, the first negligence is not contributory to the second." Bishop Non Contract Law, sec. 463.

Whether, in view of the relation of passenger and carrier, it was negligence for decedent to be upon the angle-bar, whereby, as a consequence upon the defendant's negligence, injury to decedent resulted, depends upon whether it is a duty of passengers, in the exercise of ordinary care, to anticipate negligence on the part of carriers, or whether the law regards it as an exercise of due care for a passenger to take it for granted that the carrier will in nowise be negligent. If, in law, a passenger may govern his actions by the latter view, without being chargeable with negligence, then there was here no negligence on the part of decedent. If such be the rule, decedent was free from fault or culpability in taking any place upon the car where he might be able to stand or to hold on, so far as his being injured by an occurrence such as here involved was concerned. In this connection Thirteenth Street Passenger Railway v. Boudrou, 92 Pa. St. 475, is of much interest. In that case a crowded street car was run into by the car following and a passenger standing on the rear platform of the crowded car was injured. The court said (pp. 480-1): "The large number of passengers in this city, who voluntarily stand on the platforms, because there is neither sitting nor standing room in the cars, do not, and ought not, anticipate that they will be run over by following cars. Their position has no tendency to induce the driving

of one car into another. Whatever the degree of their negligence in riding on the platform, and the risks they take in so doing, everyone knows that so long as he remains there, he is in no danger of being run down by a car, unless from its heedless handling.'' While the facts in that case are different from those in the case at bar, the principle involved is precisely the same. In New York etc. R. R. Co. v. Ball, 53 N. J. (Law) 283, it is said (289): ''To exonerate defendant from liability for its negligence, which also caused plaintiff's injury, it is not sufficient that plaintiff, by his act, contributed thereto, but it must further appear that in doing that act he was at fault and guilty of what the law calls negligence.''

Even outside of the relation of passenger and carrier individuals are not obliged to anticipate negligence in others and govern their movements by such rule. Ernst v. Hudson R. R. Co., 35 N. Y. 9, 28, 35, was a suit brought against the railroad for negligently causing the death of an individual at a crossing and the defense of contributory negligence was interposed. In that case, although the relation of passenger did not exist, the court held that the decedent had a right to assume that in propelling their cars the railroad company would act with appropriate care. By so holding the court held that acting upon that assumption was not a failure, on the part of decedent, to exercise ordinary care. To the same effect are: Harpel v. Curtis, 1 E. D. Smith 78, and Newson v. N. Y. Cent. R. R. Co., 29 N. Y. 383. In the latter case the court said (p. 390): ''The law will never hold it imprudent in anyone to act upon the presumption that another, in his conduct, will act in accordance with the rights and duties of both.'' If it be at any time true that, as a matter of law, one is not obliged, as a matter of ordinary care, to anticipate negligence in another and if the relation between the parties involved influences the determination of the question, then it is the law, that a passenger who assumes his carrier will not be

negligent, and acts accordingly, is guilty of no negligence. Of a carrier, in the care of his passengers, is required the highest degree of care known to the law. Contributory negligence, in the case at bar, is predicated only upon the supposed duty, that, in the exercise of ordinary care, a passenger must so place himself upon a car as to avoid the consequences of a negligent collision of two cars of the carrier, or at least, he must anticipate a collision, in placing himself. That is the proposition advanced by defendant. If we subscribe to such doctrine we assume that negligence by passenger carriers is so common that, in the exercise of ordinary care, passengers are required to anticipate it. The law does not require that a passenger govern his actions by anticipation of negligence on the part of his carrier. The rule is that one is liable and is held responsible only for those consequences upon his actions which he is obliged to anticipate or expect, in the exercise of ordinary care, but not for those which he is under no legal obligation to take into consideration. The possible dangers to be apprehended in standing upon the angle-bar, for the purpose of consideration in this connection, may be divided into two classes: those caused by defendant's negligence and those caused otherwise. True, decedent, by standing on the angle-bar, risked the danger, at his own peril, of injury from any source other than his carrier's negligence. But if a common carrier carries a passenger, for hire, by some means or in a mode other than usual, its general responsibility for safe carriage is not thereby otherwise relaxed than as may be incidental to the means or mode. C. & A. R. R. Co. v. Arnol, 144 Ill. 261, 271. Negligence, by the carrier, can be an incident to no means or mode. Other dangers may be so incidental. In standing upon the angle-bar decedent risked the dangers of accidents, dropping off by reason of the ordinary and inevitable jolts of the car, being brushed off by some passing vehicle, anything happening by reason of his own physical

weakness or limitation of strength and the like. Under the law no negligence could be attributed to decedent, by reason of his standing on the angle-bar, so far as dangers occurring through defendant's own negligence was concerned. In so far as the instructions given are in conflict with this principle they are erroneous.

2. The argument is made, however, that decedent was not a passenger but a trespasser and the defendant, therefore, owed him no duty except not wilfully or wantonly to injure him. This contention is based upon the conductor's statement that he refused to exchange for another the transfer decedent offered him and told decedent to get off the car. Should the conductor's version of what took place be accepted, the question arises: Upon that state of facts, was the decedent a passenger or was he a trespasser, when the collision occurred? The relation of passenger and carrier, while it is a contractual relation, is unlike the ordinary contractual relation in this, that its arising is not wholly dependent upon the *arbitrary* will of the conductor or even upon the arbitrary will of the common carrier. Were it otherwise no common carrier could be compelled, through the courts, to perform its general duty to receive and carry passengers. As a matter of law, upon the doctrine of implied contracts, the relation can arise without such meeting of the minds of the parties as is ordinarily requisite in the formation of contracts; the implication of law, from his duty, is some times stronger than the mere will of the carrier. The arbitrary will of the carrier, in the formation of this relation, has not the same play as has the arbitrary will of a party, ordinarily, in the formation of contracts. This is owing to the imperative nature of the public duty resting upon the carrier, which compels him to contract. Suppose, for instance, a person ready, able and willing to pay his fare, but who is without a ticket, with the intention of being transported as a passenger, enters and takes a

vacant seat in a passenger car of a train standing at a station where no tickets are sold; suppose, further, that before his point of destination is reached, several stations along the road from his starting point, the train is wrecked through an act of negligence of an employe of the road, he is seriously injured, or delayed to his great loss; and suppose, further, that the conductor has not passed through this passenger car and neither he nor anyone else connected with the road has observed the person in question or collected his fare, we regard it that, in such case, the relation of passenger and carrier existed at the time of the wreck, although there had not been an opportunity for the minds of the parties to meet, much less a meeting of the minds in contract. The duty and liability of the railroad would be that of a carrier and the rules of evidence of that relation would govern as to necessity of proof and otherwise. In such case the courts would not permit the possible escape of the carrier from compensating for the injury occasioned by the negligence, merely because the passenger had not been accepted as such. The contractual relation of passenger and carrier would exist—not because of an express contract, for there would be none, not because of a contract implied in fact, for there would be no facts upon which the railroad's assent or acceptance could be predicated, but because the person, under the proper circumstances, had offered himself, ready, able and willing to become a passenger and owing to the absolute legal duty of the carrier to receive him as a passenger. The contract would be an implied contract of the class implied *in law,* which the law creates, sometimes even in spite of a party's actual dissent. Chicago v. Pittsburgh, Cincinnati, Chicago & St. Louis Railroad Company, 146 Ill. App. 403. The court would hold the contract to exist as a matter of law, not as a proposition of fact. The carrier would not be permitted to say otherwise than that he had accepted the traveler as a passenger, for he would not be allowed either to dispute his public duty or to deny

his performance of that duty, where the circumstances showed it ought to have been performed. The question of the existence of the relation of passenger and carrier is, therefore, not always a question of fact for a jury. "By reason of the relation of the parties or the existence of an obligation or duty a contract may be implied by law which the party never actually intended to enter into and the obligation of which he did actually intend never to assume." Chudnovski v. Eckels, 232 Ill. 312, 317. Contracts implied in fact are those where there are facts and circumstances from which, in connection with applicable legal principles, a meeting of the minds can be inferred or deduced. A contract implied in law is a legal fiction, adopted for the purpose of enforcing legal duties by actions *ex contractu* when no contract, either express or implied in fact, exists. In this class of assumptual obligations the duty defines and limits the contract, while in the classes of express contracts and contracts implied in fact the contract defines and limits the duty. The following cases are authorities in point, some of which discuss the question; others do not, but sustain the form of action: Sceva v. True, 53 N. H. 627; People v. Speir, 77 N. Y. 144; Steamship Co. v. Joliffe, 2 Wall. (U. S.) 450; Lillard v. Wilson, 178 Mo. 145; Railway Co. v. Gaffney, 65 Ohio St. 104, 114; Hertzog v. Hertzog, 29 Pa. St. 465; Nutter v. Sydenstricker, 11 W. Va. 535; Jacobs v. Pollard, 10 Cush. 287; Bishop on Contracts, sec. 204. The acceptance of a fare or ticket, in some cases, concludes the common carrier so that he cannot thereafter deny the relation. But nowhere do we find any authority holding that the mere refusal to accept a fare or ticket conclusively precludes the traveler upon the existence of the relation. The refusal is always evidence tending to show the non-existence of the relation. It may, when the relation is in controversy, be conclusive, where the circumstances surrounding the refusal are such that the carrier had a right either to refuse trans-

portation or to waive his objection and accept the
traveler as a passenger. Street car companies are un-
der a public duty as common carriers of passengers
to furnish sufficient cars to accommodate the travel
along their lines. Such is the duty of steam railways
because they are common carriers of passengers. C.
& A. R. R. Co. v. Flagg, 43 Ill. 364; C. & A. R. R. Co.
v. Randolph, 53 Ill. 510; C. & A. R. R. Co. v. Wilson,
63 Ill. 167; C. & E. I. R. R. Co. v. Jennings, 190 Ill.
478. This duty to furnish sufficient accommodation
being a public duty they can exonerate themselves
from liability for any failure in this respect only by
proof of being prevented by some cause beyond their
control. O. & M. Ry. Co. v. People, 120 Ill. 200, is
also a case where the existence of this public duty to
furnish a sufficient number of cars to adequately and
properly accommodate the public was distinctly ex-
pressed. That case was a petition for a writ of man-
damus to compel the company to furnish, among other
things, a sufficient number of trains. The company's
answer was that it lacked the necessary money.
Although the answer was held sufficient in mandamus,
the court said: "The matter thus set up in the an-
swer no more exonerates the company from the duties
which it owes the public than the inability of one to
pay his honest debts would relieve him from his legal
liabilities to his creditors." The deduction is clear
that even lack of money to procure cars would not
relieve a street car company from liability to one who
has suffered a personal injury because of its failure
to perform its public duty to furnish a sufficient num-
ber of cars for the proper accommodation of the pub-
lic.

Decedent rightfully sought transportation to his
destination from the defendant and it was the defend-
ant's duty to furnish him this transportation. De-
fendant had his money for a passage. There was a
double duty to carry him, viz.: the general public duty
to receive and carry him and the special contract duty

to carry him, which arose out of the payment of his fare upon the car he came from and on which he received a transfer slip. He found the car on this Halsted street line overcrowded. Willing to endure the discomfort and inconvenience of standing up on the angle-bar and willing to risk the danger of injury from causes other than defendant's negligence, which the law did not require him to risk, he, in order to be able to reach his destination, took the place on the angle-bar. He took the best place he could find upon the car, the best accommodation and the best mode and means of transportation the defendant furnished, in the performance of its public duty and of its special duty to him. In view of the overwhelming evidence to the contrary, no consideration can be given to the one witness who testified that while he himself stood on the step as a matter of choice, three or four more persons could have gotten inside the front vestibule without crowding. There is no evidence in this record tending to show that either the next car or the preceding car was any less crowded or that, in fact, there was any next or preceding car. There is no legal presumption, either generally or in respect to this particular day or this particular point of time, on this subject. Under these circumstances the conductor informed decedent that he did not collect fares on the outside of the vestibule and, without stopping the car, so as to permit them to safely alight, told decedent and others to get off the front angle-bar of the car, because it was dangerous there. This, if true, we regard as clearly a most perfunctory act. The circumstances were such that he could not rightfully expect compliance. Were he a trespasser decedent was not obliged to jump off from in front of a trolley car while it was running. N. Ch. City Ry. Co. v. Gastka, 128 Ill. 613, 618. Assuming his evidence to be true, the conductor did nothing that affected decedent's right to be transported on that car. So far as we can learn from the record it was a duty of the defendant to receive and carry decedent on this car. He had paid for

his transportation and was upon this car. Decedent, as a matter of law, would have been obliged to yield to force, but, under the circumstances, he was properly insisting upon his right to be considered a passenger, notwithstanding the difficulties and conditions he was subjected to. The company's duty raised and defined its contract here. Therefore we hold that, upon the evidence in this record, as a matter of law, the relation of passenger existed and the decedent was not a trespasser at the time of the collision.

The overcrowded condition of this car tends strongly to prove an insufficiency of accommodation. Furnishing cars so overcrowded, as the one here in question was, is, in itself, *prima facie* evidence of a breach of duty by a common carrier of passengers. If, as a direct result of such breach of duty, injury be shown, we hold that the company, under such circumstances is, under the law, liable therefor. Decedent's action was induced by the wrong of defendant itself, in so operating its line as to run such an overcrowded car, which wrong and breach of duty there is, in this record, no attempt to palliate or excuse. Defendant, by this its own wrong, created a condition that practically required decedent, in order to reach his destination, to stand upon the angle-bar. By now insisting his so standing to be contributory negligence the defendant, to a large extent, interposes its own breach of duty in defense to an action for compensation for an injury sustained through its own negligence which caused the collision.

"Negligence of the plaintiffs, which will prohibit a recovery for an injury sustained by reason of defendant's negligence, must be such as contributes to the injury complained of; that is, it 'must be such, that by the usual course of events, *it* would result, unless independent, disturbing moral agencies intervene, in the particular injury.'" I. & St. L. R. R. Co. v. Herndon, 81 Ill. 143, 149. In the case now before us there was no negligence on the part of the plaintiff which, by the

usual course of events, would have resulted in the par-
ticular injury unless the independent, disturbing
moral agency of defendant's negligence had inter-
vened. Thus plaintiff's act or conduct, in standing
on the angle-bar, is eliminated, as the efficient proxi-
mate cause of his injury. Although he were negli-
gent, yet, if his negligence was not the proximate
cause of the injury, that fact avails not defendant
as a defense. In Grand Trunk Railway Co. v. Ives,
144 U. S. 408, 429, we find the rule stated as follows:
"Although the defendant's negligence may have been
the primary cause of the injury complained of, yet an
action for such injury cannot be maintained if the
proximate and immediate cause of the injury can be
traced to the want of ordinary care and caution in the
person injured; subject to this qualification, which has
grown up in recent years, (having been first enunci-
ated in Davies v. Mann, 10 M. & W. 546) that the con-
tributory negligence of the party injured will not de-
feat the action if it be shown that the defendant might,
by the exercise of reasonable care and prudence, have
avoided the consequences of the injured party's neg-
ligence." This rule, thus clearly stated, is readily
observed to be sound and logical; for if a defendant,
by the exercise of reasonable care, can avoid injuring
plaintiff and yet fails in that respect, then, his is the
fault, in law, without reference to what plaintiff did
or did not do. This rule is in complete harmony with
the reason given in the books for non-liability in cases
of concurrent or contributory negligence. In Whar-
ton on Negligence (2nd Ed.), Sec. 323, the rule in re-
spect to the proximate cause, where the question of
contributory negligence arises, is stated to be: "That
where the plaintiff's negligence is remote and the de-
fendant's proximate; or, in other words, where the
plaintiff's negligence was a condition of the injury
but not its juridical cause, then the plaintiff is not
precluded from recovery." That doctrine is also an-
nounced in Weymire v. Wolfe, 52 Iowa 533, and White

v. Lang, 128 Mass. 598, two cases directly in point in principle, although the facts are not at all similar to those in the case at bar. In Goodlander Mill Co. v. Standard Oil Co., 11 C. C. A. 253; 63 Fed. 400, we find the rule stated as follows: "The proximate cause of an injury is that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred. * * * The remote cause is that cause which some independent force merely took advantage of to accomplish something not the probable or natural effect thereof." In the case at bar plaintiff's being on the angle-bar in front of the car was merely a condition which defendant's negligent operation of its car took advantage of, as it were, and accomplished the injury to the plaintiff.

3. The instructions given are evidently "stock" instructions offered largely without previous examination as to their applicability in point of law to the facts of the case before the court. This has required at our hands a careful analysis both of the facts and of the legal principles involved. Although the defendant's negligence was, in legal effect, conceded and not in dispute, the jury are told, by the eighth instruction, that the plaintiff is required to prove the negligence of the defendant by a preponderance of the evidence before he can recover; that if he has failed in that respect, or, if the evidence is evenly balanced, or, if the preponderance of the evidence in respect to the defendant's negligence is with the defendant, then, in either of these cases, the verdict should be not guilty. Upon the facts herein this instruction could but serve the purpose of confusing or misleading the jury. The second and ninth instructions are likewise misleading and confusing on this same undisputed question of negligence. The jurors must have understood and taken for granted that the court meant something when so instructing them repeatedly. Emphasis, by frequent repetition, even of a particular properly

given proposition, is objectionable. The eleventh and twelfth instructions are erroneous in any aspect of this case, as heretofore presented by us, but they are particularly obnoxious in failing to differentiate in the possible dangers to be apprehended by standing upon the angle-bar between dangers through defendant's negligence and other dangers, that is, they place dangers through either cause on a level, so far as decedent's duty, although a passenger, to exercise care for his safety was concerned, and direct a verdict accordingly. In instructions 10 and 13 there is a failure to differentiate between proximate and remote contributory negligence. Negligence, whether proximate or remote, on the part of decedent, is, in effect, stated to bar recovery. The law is not such. There are other errors in these instructions, when applied to the facts in this particular case, which are obvious when the legal principles hereinbefore referred to are considered, but it is not necessary to lengthen this opinion by pointing them out specifically. The theory of the instructions given is, in general, not in harmony with the view of the law herein expressed.

4. Among the authorities, of this jurisdiction, cited by plaintiff, is Chicago City Railway Co. v. Schmidt, 117 Ill. App. 213. That was a case where a passenger standing on the rear bumper was injured by the negligent handling of the car following, which ran into the car he was upon. In that case there was a judgment for plaintiff of $8,000 which was affirmed by the main branch of this court and again affirmed by our Supreme Court, notwithstanding the interposition of the defense of contributory negligence in the fact of the passenger's being on the bumper of the car.

Counsel for defendant cite the case of Strong v. N. Ch. St. Ry. Co., 116 Ill. App. 246, as "a case similar in its facts to the one at bar." We do not find it to be so. In that case a person standing on the step of the car, on the "blind" side, outside of the gate barring passengers from coming in the car, was killed

by being crushed by another car at a turn. The company was held not liable. There is a strong intimation in the opinion in that case that the person injured, a boy fifteen years old, was "flipping" a ride upon an overcrowded car. But, aside from that, there is a great distinction between that case and the case at bar in that the street car company there showed the overcrowded condition to be caused by a fire blockade, something unusual and out of the ordinary, which could not have been foreseen and provided against, in other words, by the intervention of a cause beyond the company's control. No such thing is shown here. Here, also, there is no doubt but what decedent wished and intended to become a passenger, but in the Strong case there was room for doubt in that respect. We do not think it was intended in that case to hold that the company's non-acceptance of an intended passenger is, in all cases, conclusive as to the non-existence of the passenger relation. The facts in the case of C. & E. I. R. R. Co. v. Jennings, 190 Ill. 478, also cited, are so totally dissimilar to those in the case at bar that we cannot regard that case as one in point. There is nothing said in that case inconsistent with what we have said here. While authorities are therein referred to holding, upon certain totally different facts, that, in order to create the relation of passenger and carrier, it was necessary the proposed passenger in each case should be accepted as a passenger, before the relation arose, yet the Jennings case does not hold such to be the general rule; but, on the contrary, the Jennings case recognizes that the relation can arise by implication. The same is true of I. C. R. R. Co. v. O'Keefe, 168 Ill. 115. The cases of Railroad Company v. Jones, 95 U. S. 439, and Kresanowski v. Northern Pac. R. R. Co., 18 Fed. 229, to which we are referred by counsel for defendant, are both cases arising within the relation of master and servant, where, as already shown, a different rule exists as to the assumption of risk. In both cases plaintiffs were in-

jured in collisions while riding on the pilots of loco-
motives. There was in neither case the relation of a
passenger being carried for reward by a common car-
rier, so that, as herein, the burden of both the public
duty and the contractual duty rested on the defend-
ant. There was merely the duty upon the defendants
to exercise ordinary care and the cases were free for
the application of the doctrine of assumed risk in its
full potency. In both cases there was an assumption
of the risks incidental to the employment and, neces-
sarily, upon the facts, that doctrine played a part in the
decisions in both cases. The evidence showed, in both
those cases, that it was the usual, ordinary and daily
practice for the plaintiffs to be conveyed, as they were
conveyed at the time they were injured, upon cars or
locomotives, not used as passenger trains. In the
Jones case, different from the case at bar, there was
room in a car used to carry the workmen, and the
court, with reference to the person injured, said: "He
could have gone into the box car in as little, if not less,
time than it took to climb to the pilot." That does
not seem to have been so in the Kresanowski case, but
the decision in that case was expressly placed on the
ground that the person injured had assumed the risk
of injury. Here we can place a decision on no such
ground. We do not regard either of these decisions
as applicable to the facts in the case at bar. The
numerous other authorities to which we have been
referred have been carefully examined and they con-
tain nothing in conflict with what is herein said. For
the reasons indicated the judgment of the trial court
will be reversed and the cause remanded.

*Reversed and remanded.*

ADDITIONAL OPINION ON PETITION FOR REHEARING BY
MR. JUSTICE CHYTRAUS.

In Chicago City Railway Co. v. Fennimore, 199 Ill.
9, 17, our Supreme Court, as to the duty of anticipat-
ing negligence in another, said: "Anticipation of neg-

ligence in others is not a duty which the law imposes. On the contrary, it is a presumption of law that every person will perform the duty enjoined by law, or imposed by contract." The facts in that case show the degree of care therein required, on the part of the tort feasor toward the injured party, was less than in the case at bar. Here the tort feasor practically says: "Yes, I agreed to exercise the highest degree of care for your safety, compatible with the practical operation of the road and considering the mode of conveyance, and I don't dispute but what my negligence caused the injury, yet it was your duty to anticipate this my negligence and avoid the consequences thereof, and as you failed therein therefore I am not liable."

MR. PRESIDING JUSTICE SMITH.

I concur in the conclusion reached in this case but not in all the reasoning of the opinion. The judgment must be reversed and the cause remanded for errors in instructions.

MR. JUSTICE BAKER.

I concur in the above opinion of the presiding justice.