## Chicago City Railway Company v. Almon Cooper, by next friend.

### Gen. No. 12,685.

1. PASSENGER—*when carrier liable for assault upon.* A carrier is liable for an assault committed upon a passenger by a servant of such carrier where such servant is acting within the line of his duty or within the scope of his employment; but in the absence of proof that such servant in making such assault was acting within the line of his duty, no presumptions will be entertained to supply the absence of such proof.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. JOHN L. HEALY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1905. Reversed, with finding of facts. Opinion filed October 9, 1906.

WILLIAM J. HYNES, JOHN E. KEHOE and C. LEROY BROWN, for appellant; MASON B. STARRING, of counsel.

THEODORE G. CASE and JOHN T. MURRAY, for appellee.

MR. PRESIDING JUSTICE FREEMAN delivered the opinion of the court.

Appellee recovered a judgment in the Superior Court for personal injuries alleged to have been received in consequence of an assault made upon him by a motorman in the employ of appellant. From that judgment this appeal is prosecuted.

The action is trespass on the case. The declaration avers that "a motorman or driver of the said car, wrongfully, improperly, wantonly and unlawfully and without any just cause, assaulted and violently beat said plaintiff and with unlawful and excessive force and violence pushed and threw him off and out of said car to and upon the said tracks and the ground thereunder and about the wheels of said car." Appellant's

contention is that the boy, who was selling papers, was not pushed, but fell off the car in such a way as to get his left leg under the wheels, and that there was no motorman on the car from which he fell.

Appellee was a boy between thirteen and fourteen years of age when the accident occurred. His version of the occurrence is that, on the last day of April of that year he was selling papers at the corner of Eighteenth street and Wabash avenue, Chicago, and was run over about four o'clock in the afternoon of that day; that he "went to get on" an Indiana avenue electric car after it was coupled to a Cottage Grove avenue cable train at that point; that the motorman of the Indiana avenue car "has to get off there and wait until this car goes around the loop and comes back;" that as appellee was getting on, the motorman was getting off the car, that he had "the propeller in one hand and those little sticks that he uses to operate the sand brakes and bell," that is, the controller handle and the bell plunger, and the "large lever, the thing that works back and forth to push the brake;" that appellee had one foot on the bottom step and was about to put his other foot on the higher step when the motorman "grabbed" him with his right hand and shoved him off, using profane language and giving him a kind of twist so that he fell "in kind of a whirl;" that appellee had three "Journals" under his arm; that he does not remember any more until the car had run over his leg; that when he was thrown off his left leg went under the front wheel or wheels of the car, which was brought to a standstill before the hind wheel reached him. He states that he was not getting on the car to sell papers and that he had a nickel in his hand; that he was going down town to buy the five o'clock "News," to get which he says he would "have to be there between three and four o'clock;" that his leg was amputated a little over six inches below the knee.

Appellant's version of the accident is that the train which inflicted the injury consisted of a grip-car and two Cottage Grove avenue trailers, neither of which was equipped with electrical devices and upon which there was no motorman at all; that neither a motorman nor any train man had anything to do with the accident, and none was standing on or coming from the platform of the car which appellee attempted to board; that the boy got on to the front platform of a Cottage Grove avenue trailer car, the last car in a north-bound cable train, and that he jumped off this platform backward; that the train was in motion at the time he boarded it and when he jumped from it, and that as he jumped he slipped and fell with one leg partly under the wheels of the car; that the jar of the car wheels passing over his leg was noticed by the conductor of this rear car, who immediately signalled for an emergency stop; that the train was brought to a standstill so that its rear end was from twenty-five to fifty feet north of the point where the boy was lying.

That the evidence greatly preponderates in favor of appellant's main contention, cannot be questioned. There are three witnesses who testify in appellee's favor, including the plaintiff himself. The material testimony of these three is contradicted by an overwhelming number of apparently disinterested witnesses. That the injury was not inflicted by an Indiana avenue or by any electric car, that no such car was attached to that train and that it was an ordinary trailer on a Cottage Grove avenue cable train from which the boy fell and which ran over his leg, a car in which several of the witnesses were passengers from points many blocks south of Eighteenth street, is the uniform testimony of witnesses, whose evidence it is impossible to disregard. The importance of this evidence is that the trailer was not equipped with electric appliances, had no motorman to operate it and no occasion for one, and

that the boy could not therefore have been seized by any motorman of the car by which he was injured and been thrown off under the wheels, as he claims. The evidence overwhelmingly preponderates that he slipped or lost his hold when swinging off the car in a manner not unusual with newsboys seeking to sell papers on these cars, and that he was not seized or thrown or pushed off the car by anyone.

If, however, we accept the plaintiff's version of the accident, it would appear that he was seized by a motorman of an Indiana avenue electric car on said car, which had just been attached to a Cottage Grove cable train on the point of proceeding on its way; that this motorman had removed his appliances for operating an electric car, and having finished his duties was leaving the train; that although his duties on that car had ended, yet without any apparent motive he seized appellee and with a curse threw him off the car, giving him a twist which sent the boy under the wheels. According to this version the alleged act was done without cause or provocation by an employe not then on duty nor in the performance of any duty to his employer. There is no averment in the declaration to the effect that the boy was or was intending to become a passenger, nor that he was lawfully upon the car. The statement is that he was a minor "then and there being on and upon the said street car." He testified, however, that he was going to the "News" office to get papers to sell, and had a nickel in his hand to pay his fare. His evidence in this respect, while discredited by undisputed evidence, tends, nevertheless, to show that he was getting on the car with the intention of becoming a passenger. For a wilful trespass by a servant upon a passenger the carrier is responsible, if the servant is "acting within the line of his duty or within the scope of his employment. The law cannot assume, at least, as to a subordinate employe on a train, who is not entrusted with the general management and con-

trol of it, that he has control over passengers or persons attempting to ride or that he is entrusted by his employer with authority in respect to them, to eject them, and it was necessary to make the proof.'' I. C. R. R. Co. v. King, 179 Ill. 91-95. There is in the case at bar no averment in the declaration that the defendant assaulted or injured the plaintiff and no averment and no proof that the alleged wrongful act of the motorman was within the line or scope of his employment. If a passenger, appellee was entitled to protection "against personal injury from the agents or servants of appellant in charge of the train." C. & E. I. R. R. Co. v. Flexman, 103 Ill. 546-552. There is not only no proof that this alleged motorman was in any sense in charge of the train or the car, but it is clear from appellee's evidence that the motorman he describes was not so in charge nor responsible for it in any sense, at the time of the alleged occurrence. In C., R. I. & P. Ry. Co. v. Brackman, 78 Ill. App. 141-147, a case in which the general subject of liability for an unauthorized act of an employe is fully considered, it is said by Justice Dibell of the Second District: "In such an act outside his employment the servant no longer represents the master and is not acting for him, but of his own volition. * * * No person could safely employ another in any business, however humble, if he was held responsible for all acts of the servant during the period of the employment, where the acts were not authorized and were outside the duty he was hired to perform." See also C. & W. I. R. R. Co. v. Ketchem, 99 Ill. App. 660-664; Mogk v. Chicago C. Ry. Co., 80 Ill. App. 411-416; Dixon v. Northern P. R. R. Co., 68 L. R. A. 895-898.

The judgment of the Superior Court must be reversed with a finding of facts.

*Reversed with finding of facts.*