## John F. Devine, Administrator, Appellee, v. Chicago City Railway Company, Appellant.

### Gen. No. 15,469.

1. PASSENGER AND CARRIER—*what essential to establish relation.* In order to establish the relation, the person claiming to be a passenger must have put himself into the care of the carrier for the purpose of being conveyed and the carrier must, impliedly at least, have accepted him as a passenger.

2. PASSENGER AND CARRIER—*how acceptance of passenger may be shown.* The acceptance of a passenger need not be direct or expressed but there must be something from which it may be fairly implied.

3. PASSENGER AND CARRIER—*when relation not established.* Held, under the evidence, that the plaintiff, who was injured while riding upon the blind side of a car, did not become a passenger, no acceptance of him as a passenger having been shown.

4. PERSONAL INJURIES—*who not authorized to eject.* An employee on a car who is not intrusted with its general management and control but has specific duties, such as a motorman, is not presumed to be authorized by his employer to eject persons from the car, for the reason that the removal of passengers is not ordinarily within the scope of the employment of motormen or brakemen.

Action in case for death caused by alleged wrongful act. Appeal from the Superior Court of Cook county; the Hon. BEN M. SMITH, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1909. Reversed and judgment entered here upon a finding of facts. Opinion filed May 16, 1911.

**Statement by the Court.** This is an appeal from a judgment for $2000, recovered in the Superior Court of Cook County, by appellee on account of the death of his intestate, Pilade Crocetti, deceased, a boy of about 16, who was killed on December 8, 1906, as a result of riding on the front step on the west or blind side of a north bound street car. A former trial resulted in a verdict for plaintiff, which was set aside by the trial court.

The accident occurred on Halsted street about 120 feet north of Archer avenue, Chicago, where the surface of Halsted street is depressed about 4 feet, and the cars pass under

an elevated structure or viaduct crossing the street. This viaduct was supported by iron pillars extending in a north and south line between the two street car tracks in Halsted street.

The declaration contained three counts. The first two allege that Crocetti was a passenger on the north bound car; that he was on the west side of the car and on its steps, but, that the vestibule door was between the front platform of the car and Crocetti, and that, while the plaintiff's intestate was in the exercise of due care for his own safety, the motorman then driving the car, carelessly and negligently opened the vestibule door and called upon him to get off, and started for him in a threatening manner, by reason of which he became frightened and jumped hurriedly from the moving car and came into contact with a pillar of the viaduct, and was killed.

The third count charges that, while the boy was riding on the step, in the exercise of due care and caution, the motorman rushed upon him in a threatening manner while the car was going at a high rate of speed, and frightened him into jumping off the car, as a result of which he was killed.

Deceased was about 16 years of age and weighed about 140 pounds. The accident occurred just before 7 o'clock in the morning, when he was on his way from home down town. While on the Archer avenue car, he paid his fare and received a transfer slip to the Halsted street line, which slip was found on his person after the accident. He left the Archer avenue car at the west side of Halsted street, and was next seen a short distance north of Archer avenue on the west front step of a north-bound Halsted street car. This car was on the east one of the two car tracks on Halsted street, and had an enclosed vestibule at each end. When going north, the vestibule door on the west side was closed, and could not be opened from the outside, and entrance to the car was obtainable only from its east side. This Halsted street car had stoped on the south side of Archer avenue, and did not stop again until after deceased had been injured. No one saw him get on the step, though witnesses

for the plaintiff testify that they saw him standing upon it just before the accident, facing toward the inside of the car, grasping the hand hold. He apparently made no effort to notify anyone inside of the car that he wished to enter.

Plaintiff's claim is that when the car was a short distance north of Archer avenue and was beginning to descend the decline under the viaduct, the motorman, seeing the boy standing outside on the step, left the controller or lever, opened the door, and yelled at him to get off; that thereupon the boy, either in obedience to the command, or in fear of being assaulted by the motorman, jumped from the step, and his body struck one of the iron pillars, resulting in his death. There were three witnesses who testified for the plaintiff, who said they were riding on the front platform; that the car was in motion at nearly or quite full speed when the motorman yelled to the deceased to get off.

On the other hand, the testimony for the defendant was to the effect that neither the motorman nor the conductor knew that deceased was upon the car, or any part of it, at any time, until after the accident.

Appellant seeks to reverse the judgment of the court below on the following contentions:

1. That plaintiff could not recover because deceased was not a passenger; and because the alleged wrongful act on the part of the motorman was not within the scope of his employment.

2. That while plaintiff conceded on the trial (and also on argument here) that, before he could recover on any theory, it was incumbent on him to prove the exercise of ordinary care by deceased, the evidence wholly failed to establish the exercise of such ordinary care.

3. That the court erred in rulings on instructions.

B. F. RICHOLSON and C. LE ROY BROWN, for appellant.

JOHN BLOOMINGSTON and ALBERT N. GULANO, for appellee.

MR. JUSTICE BALDWIN delivered the opinion of the court.

In this case, if appellee was entitled to recover under the first two counts of his declaration, it must be established that the deceased was a passenger upon the street car in question. To entitle plaintiff to recover upon the third count, it must appear that the acts of the motorman in frightening the boy off the step were within the scope of his employment. In this state, the law has been settled by numerous decisions that, before the railroad company can be bound, under the first claim, the passenger must have put himself into its care for the purpose of being conveyed, and the carrier must, impliedly at least, have accepted him as a passenger. Illinois Central Railroad Co. v. O'Keefe, 168 Ill. 115; Chicago & Eastern Illinois Railroad Co. v. Jennings, 190 Ill. 478.

In the O'Keefe case, the Supreme Court said:

"It was also necessary for the plaintiff to prove that the relation of passenger and carrier existed between the deceased and the defendant. This relation which was claimed to exist is a contract relation. * * * If a person goes upon cars provided by the railroad company for the transportation of passengers, with the purpose of carriage as a passenger with the consent, express or implied, of the railroad company, he is presumptively a passenger. Elliott on Railroads, Sec. 1578. Both parties must enter into and be bound by the contract. The passenger may do this by putting himself 'nto the care of the railroad company to be transported, and the company does it by expressly or impliedly receiving him and accepting him as a passenger. The acceptance of the passenger need not be direct or express, but there must be something from which it may be fairly implied. One does not become a passenger until he has put himself in charge of the carrier and has been expressly or impliedly received as such by the carrier. Bricker v. Railroad Co., 132 Pa. St. 1; Webster v. Fitchburg Railroad Co., 161 Mass. 298; Elliott on Railroads, Sec. 1581. * * * The purchase of a ticket does not make one a passenger unless he comes under the charge of the carrier and is accepted for carriage by virtue of it. If a ticket holder should offer himself as a passen-

ger and should be refused transportation, there would be a
liability for consequent damages, but it would not be a lia-
bility to him as a passenger or on account of the relation of
passenger and carrier, but would be a liability for the re-
fusal to enter into that relation and to permit him to become
a passenger."

The language of the court in applying the facts in that
case has a direct bearing upon the facts in this. The court
said:

"The question is whether these facts fairly tend to estab-
lish the relation of passenger and carrier between O'Keefe
and the defendant, by showing that he had put himself in
the care of the defendant as a passenger, and had been ex-
pressly or impliedly received and accepted as such by the
defendant through any authorized agent. We think that they
do not. He did not go upon the train at the station provided
for the reception of passengers, and did not take any place
provided for the reception, accommodation or carriage of pas-
sengers.    *    *    *    It will certainly not be claimed that de-
fendant was bound to have the baggage car door open so as to
give access to its passenger coaches by way of the baggage
car. But even if that were a wrong to him, he could not
become a passenger by attempting to get in that door any
more than if he had attempted to open one of the vestibule
doors which was locked, and had failed. He had not put him-
self in care of the defendant as a passenger. Of course, the
fact that the engineer knew that deceased climbed upon the
train would not make him a passenger, since an engineer is
not authorized to act for the defendant in such a matter or
to accept passengers. Nor do we think that the mere fact
of the conductor knowing that some one had boarded the mov-
ing train on the platform between the tender and baggage car,
and might still be there, is evidence tending to show that de-
fendant accepted him as a passenger. The conductor did not
know who he was or what he was there for,—whether as a
passenger or otherwise."

The court, therefore, held in that case, that the relation

of passenger and carrier did not exist, and that there could be no recovery.

The facts in the case of Strong, Admr., v. North Chicago St. R. R. Co., 116 Ill. App. 246, were much like those in the present case. In that case, the deceased boarded an electric street car, and stood on the front step on the blind side of the car, thus occupying the same relative position that the deceased had in this case. The step on which the deceased in the above case stood, was partitioned off from the front platform by a gate or door. In that case the car was crowded, while in this it does not so appear. In neither case did the conductor see the deceased before the accident. In that case, the court held that the deceased, Brown, was not a passenger, and that the court should have directed a verdict of not guilty. The court said:

"Assuming (as to which the proof is not altogether certain) that the boy boarded and stood on that step of the car outside of the gate with the intention of becoming a passenger, it remains to be determined whether he put himself in the care of defendant and was accepted by it as a passenger. There is but seldom any formal act of delivery of the passenger's person into the care of the carrier or of acceptance by the carrier of one who presents himself for transportation; hence the existence of the relation is commonly to be implied from the attending circumstances. R. R. Co. v. Jennings, *supra*. Had the boy stood inside of the car or on either of the platforms or at any place which persons riding on the cars are usually invited or permitted to occupy, there can be no doubt but that an implication would have arisen that the defendant had accepted him as a passenger. He stood at a place where it was not only inconvenient and highly dangerous for him to stand, but where the gate plainly indicated that persons should not stand at all, and from which he could not make his way into the car so long as the gate was in its place."

In this case, appellee practically concedes that Crocetti did not, by getting on the car at the place provided for re-

ceiving passengers, place himself under the care or control of the street car company, and also concedes that, if deceased had been struck by a passing wagon, or jerked loose from the train, the company would not have been liable, both because Crocetti would have been guilty of contributory negligence as a matter of law, and for the further reason that he was not a passenger, because appellant did not know he was on the car. But appellee contends that, with the opening of the door by the motorman, there was created an opportunity for Crocetti to enter the car, and for the company to collect his fare, and he claims that, the door being opened for any purpose, the street car company immediately owed to the deceased the duty of a carrier to a passenger, especially as he had a transfer slip, and he cites the case of R. R. Co. v. Flexman, 103 Ill. 546, in support of this proposition. This was an action brought by Flexman against the railway company to recover damages for personal injuries inflicted upon him while a passenger, by a brakeman in the employ of the company. It appeared that Flexman had paid his fare to Milford. When the train arrived there, and when he was about to leave the car, he missed his watch. He then refused to leave the train until he recovered his watch, and the conductor consented that he might remain on the train until he reached Watseka. While the train was going from Milford to Watseka, a search for the missing watch was made, and a controversy arose as to its whereabouts, resulting in Flexman charging the brakeman with having taken it, whereupon the brakeman struck him in the face with a railroad lantern, inflicting severe injuries. The railroad company was held liable, but the holding was upon the express ground that there was a contract of carriage between the railroad company as a common carrier and Flexman as a passenger, under which the railroad company should have protected him against personal injuries from its agents or servants.

In this case, the relation of carrier and passenger is expressly denied, and in that case it expressly afforded the ground of the liability.

We do not say that under no conceivable circumstances

could a person riding upon a vestibule step be a passenger, and entitled to the protection which a contract of carriage would furnish. The case of Birmingham Railway Co. v. Bynum, 139 Ala. 389, cited by appellee, discloses circumstances under which that relation was properly claimed and sustained, but upon the facts in this case, we are clear that the deceased was not a passenger under the law, as laid down by our Supreme Court.

We next consider appellee's case, as made under the third count of his declaration. That count proceeds upon the theory that the motorman's act constituted a wilful and malicious assault upon the deceased, for which the company was liable.

It should be noted, however, that the declaration does not aver that the act of the motorman was within the scope of his employment, and we think the testimony offered fails to sustain the contention of appellee. There can be no doubt that the street car company might be responsible for a wilful tort committed by one of its servants, if he were acting clearly within the scope of his employment, but it would be incumbent upon the plaintiff to allege and sustain by proof both the tort and the authority of the motorman. We think it must be accepted as the law of this state that an employee on a car, who is not entrusted with its general management and control, but has specific duties, such as a motorman, is not presumed to be authorized by his employer to eject persons from the car, for the reason that the removal of trespassers is not ordinarily within the scope of the employment of the motorman or brakeman. Illinois Central Railroad Co. v. King, 179 Ill. 91; Chicago City Railway Co. v. Cooper, 128 Ill. App. 528; Chicago City Railway Co. v. Mogk, 44 Ill. App. 17; same case, 80 Ill. App. 411.

Appellee at the trial sought to establish by proof the authority of the motorman, and offered the rules of the railway company, referring to the conduct of the motorman. A portion of Section 31 "Ejectments" reads as follows:

"The motorman will assist the conductor in case of a forcible ejectment of a passenger."

Taking this extract in connection with the other rules offered, we think it clear that the conductor of the car is the only person whose act, under the conditions in this case, would have bound the company. That the motorman's chief duty was in the mechanical management and handling of the car, though he might be called upon to "assist the conductor" upon request.

In support of his contention that the street car company is liable in this case, because of the menacing conduct of its motorman, which, it is claimed, resulted in the death of the deceased, appellee cites the case of Illinois Central Railroad Company v. King, 179 Ill. 91. In that case, it is clear that the liability did not grow out of the relationship of passenger and carrier. The injured party was a trespasser, and was riding on the rods underneath the car, and he was injured by being violently jerked therefrom by the brakeman, while the car was moving six or eight miles an hour. The evidence showed that the act of the brakeman was wilful. In that case, however, there was undoubted evidence that the act of the brakeman was within the scope of his duty. Indeed, he testified, "Our instructions are to stop and put them off, if we find someone beating their way." It thus becomes very apparent that that case cannot be an authority in this.

The view we have expressed makes it unnecessary for us to consider whether the court erred in its rulings on instructions. For the reasons given, the judgment of the court below will be reversed, and judgment entered here for the appellant upon a finding of facts.

*Judgment reversed, and judgment entered here for appellant upon a finding of facts.*